577 F.Supp. 781 (1984)
Warren WEIL and Maria Galuppo, Plaintiffs,
v.
RETIREMENT PLAN ADMINISTRATIVE COMMITTEE OF the TERSON COMPANY, INC.; the Terson Company, Inc. and the Northern Trust Company, as Trustees of the Terson Company, Inc., Salaried Retirement Plan; and Rollins Burdick Hunter of New York, Inc., Defendants.
No. 82 Civ. 8468 (LFM).
United States District Court, S.D. New York.
January 5, 1984.
Eagle & Fein, P.C., New York City, for plaintiffs; Steven P. Rapoport, New York City, of counsel.
Richard W. Cutler, New York City, for defendants; Winston & Strawn by Logan T. Johnston III, Chicago, Ill., of counsel.

OPINION and ORDER
MacMAHON, District Judge.
Plaintiffs and defendants cross-move for summary judgment. We deny plaintiffs' motion and grant summary judgment for defendants.
Plaintiffs are past employees of Ward Foods, Inc. ("Ward"). They claim that they are entitled to certain benefits from the company's retirement plan as a result of a "partial termination" of that plan in 1981, as defined by the plan and applicable IRS regulations. Terson Company acquired Ward in 1981 and terminated plaintiffs and a number of other employees in the Ward candy and corporate divisions located in New York. The plan provided that in the event of a partial termination, participants in the plan would be entitled to the "proportionate interest, if any, of such participants in the Retirement Fund."[1] Defendants contend that the plan was not partially terminated in 1981 and, consequently, plaintiffs are not entitled to any additional benefits from the Retirement Plan.

Background
The two plaintiffs, Galuppo and Weil, worked in the Candy Division of Ward in New York until the summer of 1981 when their employment was terminated. Ward was acquired by Terson Company about January 1, 1981, and the Candy Division was combined with another division of Ward and relocated in Milwaukee, Wisconsin. At about the same time, the Corporate Division of Ward, also located in New York, was relocated in Chicago, Illinois. *782 The relocation of these divisions resulted in the termination of a vast majority of the employees in Ward's New York office. In support of their argument that these terminations constituted a partial termination of the plan, plaintiffs rely on statistics revealing that over 75% of the employees of the two New York divisions lost their jobs at the time of the relocations.
Defendants do not dispute plaintiffs' factual allegations. Instead, they contend that there was no partial termination of the plan as a matter of law. In support of their position, they offer further data demonstrating that the plan covered not only Ward's New York employees but also those in a number of other divisions. Specifically, defendants demonstrate that the plan covered 386 employees in 16 divisions of Ward at the time of the Terson acquisition.[2] Thus, the number of employees terminated by the relocation of the two New York divisions actually constituted a much smaller percentage of the total number of Ward employees covered by the plan. Defendants also rely on a letter received by Ward from the IRS in 1981 advising the company that its actions in terminating employees between 1975 and 1980 had not resulted in partial termination of the plan.[3]

Discussion
According to Article I(26) of the plan, partial termination must be defined by reference to Section 411 of the Internal Revenue Code and the regulations under that section. The applicable regulation provides in relevant part:
Whether or not a partial termination of a qualified Plan occurs shall be determined ... with regard to all the facts and circumstances in a particular case. Such facts and circumstances include: the exclusion, by reason of a plan amendment or severance by the employer, of a group of employees who have previously been covered by the plan; and plan amendments which adversely affect the rights of employees to vest in benefits under the plan.
I.R.C. Reg. § 1.411(d)-2(b).
The parties agree that there have been four Revenue Rulings bearing on the question of partial termination under the regulations.[4] The IRS has also issued Plan Termination Standards which give us additional guidance. There appears to be no dispute between the parties as to the material facts and relevant legal standards. The parties disagree, however, as to the application of these legal standards to the facts.
We must first determine whether we should consider only the two New York divisions, as plaintiffs contend, or include the other 16, as defendants contend, in analyzing the effect of the 1981 employee terminations. We conclude that we must consider all of the participants in the retirement plan, not just those in the two New York divisions. There is no indication in the plan itself, the statute, or the regulations that a divisional analysis like the one suggested by plaintiffs is appropriate. Furthermore, in the four Revenue Rulings cited by the parties, the percentages were based on the total number of participants in the particular plan at the time of the terminations in question.[5] It is undisputed that the same plan covered all of Ward's divisions and that the company administered the plan as a single entity. As a result, the total number of employees terminated *783 in 1981 represented 27% of the plan participants. It appears under the four Revenue Rulings that this percentage does not reach the level required for the conclusion that a partial termination has occurred. In all four, the percentages were significantly higher.[6]
A strict percentage analysis, however, is not necessarily determinative of whether a partial termination has occurred. The regulations require an examination of all the facts and circumstances in each case. Plaintiffs argue that even if we base the percentages on the total number of participants in the plan, we should still hold that a partial termination occurred. They emphasize that the two New York divisions were closed in 1981 after the Terson acquisition. We are not persuaded by this argument, however, because the number of employees in the two divisions was not significant in relation to the entire number in the plan. Furthermore, there is no indication that Terson closed the two divisions solely to deprive employees of benefits, or for that matter, for any other questionable purpose.
Plaintiffs also argue that we should not limit our examination of employee terminations to one-year periods. Their point is that an employer could avoid its obligations under its pension plan by spreading out employee terminations over a period of successive years. In its letter to Ward, however, the IRS focused on one-year periods when it advised Ward that the employee terminations from 1975 to 1980 did not constitute partial terminations of the retirement plan.[7] Furthermore, in the instant case, plaintiffs are claiming that the specific act of relocating the two divisions in 1981 constituted the partial termination.
Given these considerations, we conclude that the retirement plan was not "partially terminated" by the company when it relocated the two New York divisions in 1981. The percentage of employees terminated does not by itself constitute a basis for determining that there was a partial termination, and no other facts or circumstances warrant that conclusion.
Accordingly, plaintiffs' motion for summary judgment is denied. Defendants' motion for summary judgment is granted, and the action dismissed with costs.
So ordered.
NOTES
[1] Retirement Plan for Salaried Employees of Ward Foods, Inc., Article XIV, § 3.
[2] After the Ward Candy Division was combined with the Ward-Johnston Division, there were only 15 divisions.
[3] Exhibit B to affidavit of Margery C. Waterman.
[4] Rev.Rul. 27, 1981-1 C.B. 228; Rev.Rul. 284, 1973-2 C.B. 139; Rev.Rul. 510, 1972-2 C.B. 223; Rev.Rul. 439, 1972-2 C.B. 223. The parties agree that these Revenue Rulings provide the only authority in this area for our consideration. See Wishner v. St. Luke's Hospital Center, 550 F.Supp. 1016 (S.D.N.Y.1982).
[5] See n. 3 supra.
[6] In the three Revenue Rulings dealing with specific situations, the percentages were as follows:

Rev.Rul. 284, 1973-2 C.B. 13980%;
Rev.Rul. 510, 1972-2 C.B. 22357.6%;
Rev.Rul. 439, 1972-2 C.B. 22371%.
The parties disagree over whether we should include vested employees in the percentages. Plaintiffs argue that we should, but defendants contend that only nonvested employees are affected by the termination. We do not have to decide that question because, even if we include vested employees, the percentage of employees terminated is only 27%far short of the percentages in the Revenue Rulings.
[7] The IRS interpretation is entitled to "great weight." Trafficante v. Metropolitan Life Insurance, 409 U.S. 205, 210, 93 S.Ct. 364, 367, 34 L.Ed.2d 415 (1972); Treadco Tires, Inc. v. United States, 604 F.2d 14, 16 (5th Cir.1979).