750 F.2d 10
 55 A.F.T.R.2d 85-404, 85-1 USTC P 9164,
5 Employee Benefits Ca 2537
 Warren WEIL and Maria Galuppo, Plaintiffs-Appellants,
v.
RETIREMENT PLAN ADMINISTRATIVE COMMITTEE FOR the TERSON
COMPANY, INC., The Terson Company, Inc., and The Northern
Trust Company, as Trustees of the Terson Company, Inc.,
Salaried Retirement Plan, and Rollins Burdick Hunter of New
York, Inc., Defendants-Appellees.
 No. 1305, Docket 84-7109.
 United States Court of Appeals,
Second Circuit.
 Argued May 30, 1984.
Final Brief Received on Aug. 27, 1984.
Decided Dec. 3, 1984.
 
 John J. Braverman, New York City (Eagle & Fein, P.C., New York City, of counsel), for plaintiffs-appellants.
 Logan T. Johnston, Phoenix, Ariz. (Winston & Strawn, Richard W. Cutler, New York City, of counsel), for defendants-appellees.
 Glen L. Archer, Jr., Asst. Atty. Gen., Michael L. Paup, Richard Farber, Michael J. Roach, Attys., Tax Division, Dept. of Justice, Washington, D.C., Rudolph W. Giuliani, U.S. Atty., New York City, of counsel, for the United States of America as amicus curiae.
 Before FEINBERG, KAUFMAN, and PIERCE, Circuit Judges.
 PIERCE, Circuit Judge:
 
 
 1
 Appellants Maria Galuppo and Warren Weil challenge the district court's grant of summary judgment in favor of appellees The Retirement Plan Administrative Committee for the Terson Company, Inc., The Terson Company, Inc. ("Terson"), The Northern Trust Company, Salaried Retirement Plan, and Rollins Burdick Hunter of New York, Inc. Appellants were formerly salaried employees of Terson's predecessor company, Ward Foods, Inc. ("Ward") and were as well participants in the Retirement Plan for Salaried Employees of Ward Foods, Inc. ("Plan" or "Ward's Plan"). As a result of a corporate reorganization in which Terson purchased Ward and relocated a substantial portion of Ward's operations, appellants Weil and Galuppo were terminated. They brought suit claiming that under the Employee Retirement Income Security Act of 1974, Pub.L. No. 93-406, 88 Stat. 829, (codified at 26 U.S.C. Secs. 401 et seq. (1982)) ("ERISA"), the appellees had partially terminated the Ward's Plan thereby entitling appellants to vesting of certain benefits. Appellants and appellees both moved for summary judgment. The district court granted appellees' motion ruling that, as a matter of law, their actions in reorganizing Ward Foods did not partially terminate the Plan. Reviewing the present record, we conclude that it contains insufficient evidence to allow a determination as to whether appellees' actions have partially terminated the Plan. We therefore reverse and remand.
 
 BACKGROUND
 
 2
 From January of 1973 through May of 1981, when he was terminated, Warren Weil was a salaried employee of Ward. At the time of his termination, Weil was Director of Marketing. Maria Galuppo was also a salaried employee of Ward. She worked as a secretary from January of 1973 through July of 1981 when she also was terminated. During the time that it employed Weil and Galuppo, Ward maintained a retirement pension plan--viz., the Ward's Plan--which qualified for favorable tax treatment under ERISA (a "qualified plan"). Prior to January 1, 1979, the Ward's Plan required that employees, in order to participate, contribute a specified percentage of their pay to the Plan's fund. Both Weil and Galuppo elected to participate in the Plan and made the required contributions. The Plan also provided that, absent termination or partial termination of the Plan, benefits funded by Ward would vest only after an employee had completed ten years of service. Because Ward terminated both Weil and Galuppo before either had completed ten years of service, neither of them was entitled to any non-vested benefits--unless their termination occurred pursuant to a partial termination of the Ward's Plan.[1]
 
 
 3
 The circumstances surrounding Ward's termination of Weil and Galuppo are essentially undisputed. See Weil v. Retirement Plan Administrative Committee of the Terson Company, Inc., 577 F.Supp. 781, 782 (S.D.N.Y.1984). On December 31, 1980, appellee Terson acquired Ward Foods. Terson was formed for the purpose of making this acquisition and had no significant business operations of its own before acquiring Ward. Consequently, Terson had no retirement plan qualified under ERISA--other than the Ward's Plan--nor any history of providing employee retirement benefits pursuant to a qualified plan. Upon acquisition of Ward, Terson began to reorganize its business. Terson installed new management in several divisions of Ward and undertook to relocate a substantial portion of Ward's operations. As part of this general reorganization and relocation, Terson closed all of Ward's New York operations. This reorganization resulted in termination of 104, or 27%, of the Plan's 386 active participants throughout the country. If one considers only New York participants, the effect of Terson's reorganization on the Plan's participants was more drastic: fifty-one, or approximately 62%, of eighty-three New York participants were terminated. Weil and Galuppo, both New York employees, were among those so terminated.
 
 
 4
 The district court, considering these facts on cross-motions for summary judgment, held that, as a matter of law, Terson had not partially terminated the Ward's Plan. In reaching this conclusion, the district court relied principally on several rulings of the Internal Revenue Service ("IRS"). In each of these rulings, the IRS concluded that the plan in issue had been partially terminated. However, each involved a termination rate significantly higher than the 27% nationwide termination rate for the Ward's Plan. See Rev.Rul. 73-284, 1973-2 C.B. 139 (80% termination rate); Rev.Rul. 72-510, 1972-2 C.B. 223 (57.6% termination rate); Rev.Rul. 72-439, 1972-2 C.B. 223 (70.6% termination rate). Reviewing these rulings, the district court concluded that the 77% termination rate shown here could not amount to a partial termination of the Plan, and it therefore granted appellees' motion and dismissed the complaint.
 
 
 5
 Plaintiffs timely filed a notice of appeal. Following oral argument, in order to have the benefit of the government's views regarding the issues presented herein, we invited the United States to make an amicus submission on which the parties then commented. Having reviewed this brief, which presented arguments not before the district court, we now proceed to discussion of the case.
 
 DISCUSSION
 
 6
 ERISA requires that a retirement benefit plan, to qualify for favorable tax treatment, must provide that upon "partial termination" of such plan "the rights of all affected employees to benefits accrued to the date of such ... partial termination ..., to the extent funded as of such date, or the amounts credited to the employees' accounts, are nonforfeitable." 26 U.S.C. Sec. 411(d)(3) (1982). However, ERISA does not define "partial termination" nor does it provide guidelines for determining when particular events or sequences of events, such as layoffs, plant closings, reductions in force, or relocations of all or part of a company's business, should be considered a "partial termination" of a qualified plan. Therefore, in determining the meaning of "partial termination," we must look to other sources.
 
 
 7
 The applicable regulations of the Secretary of the Treasury provide in pertinent part that
 
 
 8
 [w]hether or not a partial termination of a qualified plan occurs when a group of employees who have been covered by the plan are subsequently excluded from such coverage either by reason of an amendment to the plan, or by reason of being discharged by the employer, will be determined on the basis of all the facts and circumstances. Similarly, whether or not a partial termination occurs when benefits or employer contributions are reduced, or the eligibility or vesting requirements under the plan are made less liberal, will be determined on the basis of all the facts and circumstances.
 
 
 9
 Treas.Reg. Sec. 1.401-6(b)(2) (1963). The several published IRS rulings in which the Secretary has applied these regulations make clear that the dismissal of a "significant number of employees" in connection with a major corporate event constitutes a partial termination. Rev.Rul. 73-284, 1973-2 C.B. 137; Rev.Rul. 72-510, 1972-2 C.B. 223. Though it is not binding upon us, we accord this interpretation--by the department charged with administering the subject section of ERISA--"great weight." Trafficante v. Metropolitan Life Insurance Co., 409 U.S. 205, 210, 93 S.Ct. 364, 367, 34 L.Ed.2d 415 (1972); see Federal Election Commission v. Democractic Senatorial Campaign Committee, 454 U.S. 27, 39, 102 S.Ct. 38, 46, 70 L.Ed.2d 23 (1981). Moreover, this approach to defining "partial termination"--viz., focusing on the number of employee terminations made in connection with significant corporate or plan events--is supported by the House and Senate Committee Reports that accompanied the various drafts of ERISA. See H.R.Rep. No. 93-807, 93rd Cong., 2d Sess. 65 (1974) (reprinted at 1974-3 C.B. Supp. 236, 300) ("a partial termination might include, under certain circumstances, a large reduction in the work force, or a sizable reduction in benefits under the plan ...."); S.Rep. No. 93-383, 93rd Cong., 1st Sess. 50 (1973), U.S.Code Cong. & Admin.News 1974, p. 4639 (reprinted at 1974-3 C.B. Supp. 80, 129) (same).
 
 
 10
 Viewing the uncontested facts, which comprise the record of this case thus far, in light of this understanding of "partial termination," we conclude that a partial termination of the Ward's Plan may have occurred. However, because the occurrence vel non of partial termination of a qualified plan is to be decided on the basis of all relevant facts and circumstances, we conclude that the record before the district court was inadequate to allow a grant of summary judgment on this issue--and consequently is inadequate to allow us to dispose of this case. Given the opportunity to embellish the record and, if necessary, proceed to trial, appellees might present evidence of facts and circumstances which demonstrate that of the eighty-three terminated New York Plan participants, a substantial number left their employment voluntarily or were dismissed for reasons unrelated to Terson's reorganization of Ward. Such a showing that only an "[in]significant number of employees" was terminated in connection with the corporate event at issue here would militate against any finding that partial termination of the Plan occurred. Conversely, appellants might show that Ward simply dismissed all or nearly all of its New York employees in connection with the closing of New York operations. Appellants Weil and Galuppo both testified on deposition that they had been discharged without offer of employment at any of the reorganized divisions of Ward located in other cities. Deposition of Plaintiff Warren Weil (April 21, 1983) at 23; Deposition of Plaintiff Maria Galuppo (April 21, 1983) at 11-15. However, there is no direct evidence in the record concerning the circumstances under which the remaining forty-nine New York employees of Ward left the company. Similarly, the record is unclear whether employee terminations in 1980 may have been related to the then impending Terson acquisition and reorganization of Ward. If related, such terminations should be considered in determining whether Terson in 1981 partially terminated the Ward's Plan. Evidence presented by appellants on these matters might compel a conclusion that the Plan was partially terminated.
 
 
 11
 Finally, we note that even if partial termination did occur, appellants still may not be entitled to judgment. Appellants are entitled to vesting of otherwise forfeitable benefits upon partial termination only to the extent that the benefits were funded as of the date of such termination. 26 U.S.C. Sec. 411(d)(3) (1982); Treas.Reg. Sec. 1.411(d)-2 (1977). If they are to prevail, appellants must demonstrate funding of the benefits they seek.
 
 CONCLUSION
 
 12
 For the foregoing reasons, we reverse the judgment of the district court and remand the case for further proceedings consistent with this opinion.
 
 
 
 [1]
 Appellants' employee contributions were refunded with interest at the time their employment was terminated. Plaintiffs do not raise any dispute with regard to these monies. See Complaint at 6