Robert BAYER, Melvin Greiner, Lucretia Hylton, Christopher Juracek, Thomas Majewski, Steven Marcoe, Paul Schaffer, Jeffrey Scheurich, Wesley Sims, and Edwin Haack, individually, and on behalf of all others similarly situated, Plaintiffs,

v.

HOLCROFT/LOFTUS, INCORPORATED, a wholly-owned SUBSIDIARY OF THERMO ELECTRON CORPORATION, Defendants.

No. 90–70306.

United States District Court, E.D. Michigan, S.D.

July 16, 1991.

George Kruszewski, Detroit, Mich., for plaintiffs.

George D. Mesritz, Detroit, Mich., for defendants.

## MEMORANDUM AND ORDER

COHN, District Judge.

### I.

This is a case under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001 *et seq.* Plaintiffs are ten employees of defendant, Holcroft/Loftus, Inc. (Holcroft), who accrued benefits during the course of their employment under the terms of the Holcroft & Company Employees' Retirement Plan (the Plan).[1] Plaintiffs say that, after the Internal Revenue Service (IRS) approved the termination of the Plan, Holcroft breached its contractual obligations under the Plan by failing to pay to them their accrued benefits.[2]

---

1. Although originally filed as a class action, this matter has not been pursued as such. Aside from the named plaintiffs, no other potential plaintiffs have been identified.

2. Plaintiffs also say Holcroft breached its fiduciary duty under ERISA. However, this claim is time barred by the applicable statute of limitations. 29 U.S.C. § 1113 states that a person must file a breach of fiduciary duty complaint under ERISA within three years after the date on which he or she had knowledge of the alleged violation. At the latest, plaintiffs had knowledge of the alleged violation on March 1,

Now before the Court is Holcroft's motion for summary judgment. It says, among other things, the interpretation of the Plan by Holcroft was not arbitrary or capricious and therefore must be affirmed. The Court agrees. Holcroft's motion for summary judgment will be granted and this case will be dismissed.

## II.

The following facts, as gleaned from the affidavits, depositions testimony and documents in the record, are not in material dispute.

## A.

All of the plaintiffs were employees of Holcroft, a manufacturer and distributor of industrial furnaces, and were laid off in either 1982 or 1983. Plaintiffs were part of a collective bargaining unit represented by the Carpenters District Council of Detroit (CDCD). The Plan, began in 1942, applied to members of the CDCD, just as it did to other employees of Holcroft who were not covered by any other pension plan. Holcroft was the administrator and a fiduciary under the Plan.

The 1983–1986 contract between Holcroft and CDCD referenced the Plan and confirmed Holcroft's right to unilaterally change it or adopt a new plan.

## B.

A person was considered terminated under the Plan if he or she had been laid off from Holcroft for more than three months.[3]

Section 4.5 of the Plan stated: "A Participant with 5 or more years of Continuous Service whose employment is terminated for reasons other than retirement or death shall be eligible for a Deferred Vested Benefit in accordance with the provisions of Section 5.5." Under Section 5.5, a participant's benefit was limited to a fraction of the accrued benefits based on years of service with Holcroft.[4]

The termination provision of the Plan, Section 11.3, stated: "In the event of the termination of the Plan in whole or in part, Accrued Benefits determined as of the date termination of all affected participants shall be fully vested to the extent that they are then funded."

1985, when an unfair labor practice charge was filed by their union on behalf of certain Plan participants who were in the collective bargaining unit. Plaintiffs complaint was not filed until February 8, 1990, or at least five years after they had knowledge of the alleged breach of fiduciary duty. In any event, plaintiffs have apparently abandoned their breach of fiduciary duty claim. They did not address the claim in their response to Holcroft's motion for summary judgment. Thus, Holcroft's motion for summary judgment as to the breach of fiduciary duty claim is GRANTED and this claim is DISMISSED.

3. Section 3.1 of the Plan stated in relevant part:
*Continuous Service*
    A participant's eligibility for benefits under the Plan shall be determined by his period of Continuous Service, in accordance with the following:
        \*      \*      \*      \*      \*      \*
    [3.1(b) ](2) A break in service shall not be deemed to have occurred whenever an Employee is absent from employment on account of being on layoff or a leave of absence approved by the Company due to personal illness, injury or temporary disability or such other reason as may be approved by the Company; provided, however that if such layoff is

of three months or more in duration, or such leave of absence is of six months or more in duration a break in service shall be deemed to have occurred three months after the date of the Employee's layoff began or six months after his leave of absence began, whichever is applicable. The period of time during which the individual is absent from employment on layoff or leave of absence shall be considered as Continuous Service.

4. Section 5.5 set forth the applicable percentages to be used in computing the deferred vested benefit:

| Years of Continuous Service | Percentage |
|---|---|
| Less than 5 | 0% |
| 5 | 25 |
| 6 | 30 |
| 7 | 35 |
| 8 | 40 |
| 9 | 45 |
| 10 | 50 |
| 11 | 60 |
| 12 | 70 |
| 13 | 80 |
| 14 | 90 |
| 15 | 100 |

## C.

In 1983, Holcroft decided to terminate the Plan and replace it with another plan. There is no evidence plaintiffs' layoffs were linked to the decision to terminate the Plan. The IRS and the Pension Benefit Guaranty Corporation (PBGC) approved the Plan termination on January 27, 1984 and February 6, 1984, respectively.[5] Both the IRS and the PBGC had notice and knowledge of the payout to be received by each Plan participant.

After the plan was terminated, The Wyatt Company (Wyatt), the actuarial consulting firm which had provided services for the Plan, recommended how to calculate and distribute the Plan's assets. In November 1984, Holcroft, relying on Wyatt's calculations, distributed the Plan's assets in the following fashion:

—Each participant who was an active employee on February 6, 1984, the Plan termination date, received credit for 100 percent of the accrued benefit, that is the entire amount which had been contributed on his or her behalf.

—Participants, like plaintiffs, who had been laid off for more than three months as of the Plan termination date and were thus not active employees on February 6, 1984, were paid the lesser deferred vested amount, in keeping with Section 5.5 of the Plan.

## D.

The plaintiffs, through CDCD, filed a grievance protesting the failure to treat them as fully vested. The grievance was never pursued. However, an unfair labor practice charge was filed with the National Labor Relations Board (NLRB) raising a similar issue.

**5.** All plaintiffs returned to work in 1984 but subsequent to the Plan's termination. Their return to work is irrelevant to their rights in this case.

**6.** Holcroft says the doctrines of *res judicata* and collateral estoppel prevent the plaintiffs from bringing their claim. The Court disagrees. It is well known that these doctrines apply only if an issue before a court has already been decided on its merits. Here, the Court of Appeals for

An administrative law judge held for CDCD. *Thermo Electron Corp.*, No. 7–CA–24352/25506 (N.L.R.B. October 28, 1986). The NLRB reversed the decision, *Thermo Electron Corp.*, 287 N.L.R.B. No. 83 (December 16, 1987), terming the dispute solely one of contract interpretation, and dismissed the complaint in its entirety. The NLRB said Holcroft's and CDCD's interpretation of the Plan were "equally plausible" and therefore no unfair labor practice occurred. The Court of Appeals for the Sixth Circuit affirmed in an unreported decision, *Carpenters District Council of Detroit v. National Labor Relations Board*, No. 88–6247 at 10 (6th Cir. August 31, 1989) [884 F.2d 578 (table)], the NLRB's dismissal, agreeing that "there are two equally plausible contract interpretations." [6]

## III.

In *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 956, 103 L.Ed.2d 80 (1989), the United States Supreme Court held: "[A] denial of benefits challenged under § 1132(a)(1)(B) [of ERISA] is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." When such authority is given, a deferential standard of review, i.e. an arbitrary and capricious standard, is appropriate. *See Miller v. Metropolitan Life Insurance Co.*, 925 F.2d 979, 984 (6th Cir.1991). "An ERISA benefit plan administrator's decisions on eligibility are not arbitrary and capricious if they are rational in light of the plan's provisions." *Daniel v. Eaton Corp.*, 839 F.2d 263, 267 (6th Cir.1988), *cert. denied*, 488 U.S. 826, 109 S.Ct. 76, 102 L.Ed.2d 52 (1988).

the Sixth Circuit did not decide the issue presented in this case, namely whether the Plan's terms entitled plaintiffs to their accrued benefits. It merely decided that Holcroft's and CDCD's respective interpretations of the Plan were equally plausible and therefore no unfair labor practice occurred. It did not, however, analyze the Plan to determine which interpretation was in fact correct.

## A.

Plaintiffs say that under *Firestone* the Court must apply a *de novo* standard of review, in determining if Holcroft properly allocated benefits under the Plan. They do not dispute that the Plan gave to a committee formed by Holcroft (the Plan Committee) the discretionary authority to determine eligibility for benefits.[7] However, plaintiffs argue the Plan gave that authority only to the Plan Committee which was not in existence at all times relevant to this action.[8] Thus, plaintiffs say, Holcroft itself, independent of the Plan Committee, did not have the discretionary authority to determine benefits.

■ This argument ignores Section 8.5 of the Plan which stated: "The Fiduciaries may allocate duties among themselves or delegate to other persons the performance of their responsibilities." This language strongly implies that Holcroft, as the Plan's administrator acting in a fiduciary capacity, had the discretionary authority to determine eligibility for benefits.[9] Thus, the Court may review Holcroft's allocation of benefits under the less strict arbitrary and capricious standard.[10]

■ The same arbitrary and capricious standard applies even though Holcroft delegated to Wyatt its duty of interpreting the Plan as to benefits. *See Madden v. ITT Long Term Disability Plan*, 914 F.2d 1279, 1283–85 (9th Cir.1990).[11]

## B.

■ There simply is no evidence suggesting that Wyatt's interpretation of the Plan's provisions was either arbitrary or capricious, that is irrational. Under the terms of the Plan, a participant is entitled to accrued pension benefits only if he or she is "affected" by its termination. Wyatt reasonably concluded the plaintiffs were not affected by the plan's termination because: (1) under Section 3.1(b)(2) of the Plan, they were considered terminated in 1982 or 1983 well before the date of the Plan's termination, (2) there is no evidence their terminations were directly linked to the termination of the Plan, and (3) courts have held, under 26 U.S.C. § 411(d)(3), a person is unaffected by a plan's termination unless either he or she was employed by the plan-sponsoring employer at the time of the plan's termination or his or her discharge was directly linked to the plan's termination. *Artz v. Fairbanks Co.*, 112 F.R.D. 59, 61 (N.D.N.Y.1986); *Weil v. Retirement Plan Admin. Comm. for Terson, Co., Inc.*, 750 F.2d 10, 13 (2nd Cir.

---

7. Section 9.5 of the Plan provided that the Plan Committee has the power:
   to interpret and construe the plan and to determine all questions of eligibility, length of service, dates of birth, membership and retirement, computation of benefits and related matters. All discretionary actions to be taken under the Plan by the Committee shall be uniform in their nature or applicable to all individuals similarly situated.

8. Holcroft, for the purpose of this motion only, has admitted that the Plan Committee did not interpret the Plan's provisions as to benefits upon termination. In fact, there is little, if any, evidence suggesting that the Plan Committee existed during the periods relevant to this action.

9. Plaintiffs may contend that the Plan Committee could not have allocated its responsibilities as to benefits to Holcroft because the Plan Committee never existed. This contention, if accepted, would allow the triumph of form over substance since, under the Plan, Holcroft had complete control over the Plan Committee's composition.

10. Because Holcroft could profit from the termination of the Plan, there was a potential for a conflict of interest between its fiduciary role as the Plan's administrator and its profit making role as a business. The Court of Appeals for the Sixth Circuit has held that in these circumstances the arbitrary and capricious standard still applies, but the application of the standard should be sharpened by the circumstances of the inherent conflict of interest. *Miller v. Metropolitan Life Insurance Co.*, 925 F.2d 979, 984–985 (6th Cir.1991).

11. Under ERISA, a named fiduciary may delegate its fiduciary responsibilities if a plan provides that "persons other than named fiduciaries [may] carry out fiduciary responsibilities." 29 U.S.C. § 1105(c)(1). Here, the Plan did precisely that. Section 12.2 of the Plan specifically required Holcroft, not the Plan Committee, to "appoint an Actuary." Section 11.3 of the Plan stated that, upon termination, the Plan assets must be distributed "based on the advice of the Actuary."

1984). The conclusion that Holcroft's interpretation of the Plan was reasonable is bolstered by the fact that, in making its decision as to benefits, it relied heavily on the recommendations of Wyatt, a well known and respected actuarial firm. *See Miller*, 925 F.2d at 985 (defendant's decision as to pension plan was not arbitrary and capricious when decision was based largely on report of consultant designated by defendant).[12]

## IV.

In light of the above, Holcroft's motion for summary judgment is GRANTED and this case is DISMISSED.

**12.** Even if the Court were to apply a *de novo* standard of review, it would hold that Holcroft did not breach its obligations under the Plan. *See Firestone*, 489 U.S. at 112–13, 109 S.Ct. at 954–55 (under *de novo* standard, a court must review a plaintiff's claim as it would review any other contract claim—by looking to the terms of the plan and other manifestations of the parties' intent). Plaintiffs' argument glosses over Sections 4.5 and 5.5 of the Plan which provided that terminated employees are ordinarily entitled only to deferred vested benefits, not the full amount of money that has been contributed on their behalf. There is no evidence to suggest that plaintiffs were entitled to what would be a windfall because the Plan was terminated. One of the general purposes of a pension plan is to encourage employees to stay with an employer over long periods of time. Plaintiffs' interpretation of the Plan, if accepted, would serve to undermine the attainment of this goal. If there is a reasonable chance of a plan's termination in the future and if an employee knows that upon the plan's termination he or she would be entitled to all of his or her accrued benefits, then there would be less incentive for the employee to continue on the job.