138 F.3d 1062
 21 Employee Benefits Cas. 2842,
Pens. Plan Guide (CCH) P 23940S
Walter J. BORDA, Plaintiff-Appellant,
v.
HARDY, LEWIS, POLLARD & PAGE, P.C.; Hardy, Lewis, Pollard &
Page, P.C. Profit Sharing Plan; and David M.
Davis and Patrick M. Higdon, the plan's
named fiduciaries, Defendants-Appellees.
 No. 97-1004.
 United States Court of Appeals,
Sixth Circuit.
 Argued Dec. 11, 1997.
Decided March 5, 1998.
 
 J.R. Wheatley (argued and briefed), Strobl & Borda, Bloomfield Hills, MI, for Walter J. Borda.
 David M. Davis (argued and briefed), Hardy, Lewis & Page, Birmingham, MI, for Hardy, Lewis, Pollard & Page, P.C., Hardy, Lewis, Pollard & Page, P.C. Profit Sharing Plan, and David M. Davis.
 David M. Davis, Hardy, Lewis & Page, Birmingham, MI, Neil H. Goodman, Patrick M. Higdon, Pollard & Albertson, Bloomfield Hills, MI, for Patrick M. Higdon.
 Before: NELSON and DAUGHTREY, Circuit Judges; CARR, District Judge.*
 OPINION
 DAVID A. NELSON, Circuit Judge.
 
 
 1
 As a former participant in the profit sharing plan of a professional corporation by which he had been employed, the plaintiff in this ERISA case chose not to withdraw his vested share of the plan's assets after he quit his job. Under the terms of the plan, this meant that his non-vested share of an account funded by employer contributions was to be credited to a suspense account pending forfeiture or further vesting.
 
 
 2
 A forfeiture could be triggered either by a distribution to the plaintiff of the entire vested interest or by a five-year break in service. If the plaintiff had been rehired within the five year period without a distribution having occurred, he would have been entitled to credit for his past service and could have resumed the accumulation of service credits, thereby increasing the percentage of his account that was vested.
 
 
 3
 The plaintiff was never rehired, as things turned out, and the corporation was dissolved some three-and-a-half years after the plaintiff quit. The profit sharing plan was terminated when the corporation went out of existence.
 
 
 4
 In order to qualify for favorable tax treatment under the Internal Revenue Code, the plan had to provide that accrued benefits of all "affected employees" would become nonforfeitable upon termination of the plan. 26 U.S.C. § 411(d)(3). The termination provisions adopted in the plan said that "[u]pon any [plan] termination ... all amounts credited to the affected Participants' Combined Accounts shall become 100% Vested and shall not thereafter be subject to Forfeiture...."
 
 
 5
 Contending that he was an "affected" participant within the meaning of this provision, the plaintiff claimed that his unvested share became vested upon termination of the plan. The plan's trustees rejected this claim. They took the position that the plaintiff could not be "affected" by the termination because, although the five-year period had not yet run, the dissolution of the corporation made it certain that the plaintiff could never be rehired. The trustees read the plan as requiring that only the vested portion of the plaintiff's account be distributed to him, with the non-vested portion going to the remaining participants. As there was no possibility that any of the nonvested portion could become vested in the future through a return to work, the trustees in effect treated the forfeiture as having occurred a year-and-a-half early.
 
 
 6
 The district court concluded that the measure of discretion vested in the trustees by the terms of the plan was such as to require use of the "arbitrary and capricious" standard of review. Applying that standard, the district court held, on motion for summary judgment, that the decision of the trustees was rational and they were therefore entitled to judgment as a matter of law. Upon de novo review of the record, we find ourselves in agreement with this result. Given the undisputed facts of the case, we are not prepared to say as a matter of law that the plaintiff had to be treated as an "affected" participant. That being so, it seems clear to us that the district court not only applied the correct standard of review, but applied the standard correctly. The judgment will be affirmed.
 
 
 7
 * The plaintiff, Attorney Walter J. Borda, became an employee of the law firm of Hardy, Lewis, Pollard & Page, P.C., on January 1, 1989. The firm had set up a qualified profit sharing plan some years earlier, and Mr. Borda was allowed to participate in the plan from the outset of his employment.
 
 
 8
 As a participant in the plan, Mr. Borda made periodic elections to defer some of his law firm compensation. This deferred compensation was contributed to a "Salary Reduction Account" established for him under the plan. The Salary Reduction Account--which was funded with contributions made, in effect, by Mr. Borda himself--was never subject to forfeiture. It was fully vested at all times, in other words.
 
 
 9
 In addition to the contributions made by Mr. Borda, contributions to the profit sharing plan were made on his behalf by the law firm. Unlike the account funded with Mr. Borda's own contributions, the account funded with employer contributions was not fully vested when Borda resigned. The plan provided that as a participant's years of service with the firm increased in number, the vested percentage would increase in accordance with a prescribed scale. By promising annual increases in the vested percentage, culminating in full vesting after six or seven years, the plan offered an incentive for newer employees to remain in the firm's employ--and, under some circumstances, to rejoin the firm if they did leave for a time.
 
 
 10
 Mr. Borda's years of service never reached the level required for full vesting of the employer contribution account. Mr. Borda voluntarily resigned as an employee of the firm effective June 20, 1991, in order to accept a more lucrative position elsewhere. At the time of his resignation, the parties have come to agree, 40 percent of his employer contribution account was vested and 60 percent was not vested.
 
 
 11
 When Mr. Borda ceased to be an employee, he no longer met the definition of a "Participant" in the profit sharing plan.[1] Under the plan's definitions, he became a "Former Participant" and a "Terminated Participant." As such he was free to withdraw the vested portion of his combined accounts (100 percent of the account funded with his own contributions and 40 percent of the account funded with the employer's contributions), but he could not be required to do so.
 
 
 12
 As we have said, Mr. Borda chose not to cash out his vested interest. This choice meant that the non-vested portion of his employer contribution account went into a suspense account rather than being immediately forfeited. It also meant that his vested percentage would again be subject to annual increases, with credit for past service, were he to be reemployed within five years.
 
 
 13
 The law firm broke apart in 1994, its lawyers going with one or another of two newly established firms. The trustees and de facto administrators of the profit sharing plan--defendants David M. Davis and Patrick M. Higdon--notified Mr. Borda in November of 1994 that the plan would be terminated effective at the end of the year. Mr. Borda was told that his vested account balances would be distributed to him as soon as possible after termination.
 
 
 14
 By letter dated November 23, 1994, counsel for Mr. Borda notified the trustees of "a claim that Mr. Borda's account balance should be 100% vested as a result of the termination of the Plan." This claim was based upon § 411(d)(3) of the Internal Revenue Code, 26 U.S.C. § 411(d)(3). Section 411(d)(3) denies the tax advantages of "qualified" plan status if the plan fails to provide that upon its termination, "the rights of all affected employees to benefits accrued to the date of such termination ... to the extent funded as of such date, or the amounts credited to the employees' accounts, are nonforfeitable."
 
 
 15
 The profit sharing plan in which Mr. Borda had been a participant was intended to be a qualified plan, and it contained a provision designed to comply with § 411(d)(3). Although the provision spoke of "affected Participants" instead of "affected employees," the trustees have never treated this difference in terminology as significant.
 
 
 16
 Neither have the trustees ever attempted to exploit the fact that Mr. Borda did not come within the plan's definition of a "Participant" after he quit his job. The trustees have consistently denied, however, that Mr. Borda was an "affected" participant or an "affected" employee at the time the plan was terminated.
 
 
 17
 In a letter sent to Mr. Borda's counsel under date of December 20, 1994, the trustees explained their position as follows:
 
 
 18
 "The determination that Borda was not an 'affected employee' under IRC Section 411(d)(3) was based on the following: 1) Borda voluntarily terminated his employment with the Employer well before the date of the Plan's termination; 2) Borda's voluntary termination was in no way related to the termination of the Plan; and 3) Simultaneous with the termination of the Plan on December 31, 1994, the Employer will be dissolved and therefore it will be impossible for Borda to be rehired by the Employer prior to incurring five consecutive one-year breaks in service."
 
 
 19
 The trustees' letter cited Bayer v. Holcroft/Loftus, Inc., 769 F.Supp. 225 (E.D.Mich.1991), in support of this position.
 
 
 20
 Mr. Borda sought to appeal the trustees' determination in the manner prescribed by the plan. It is appropriate for us to assume--although we need not so decide--that he fully exhausted his contractual remedies. Pursuant to the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001 et seq., Mr. Borda then instituted the present lawsuit, naming as defendants the trustees of the plan, the plan itself, and the defunct law firm. The district court ultimately granted summary judgment to the defendants, and this appeal followed.
 
 II
 
 21
 In Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), the Supreme Court held that a denial of benefits to a participant in or beneficiary of an employee benefit plan governed by ERISA "is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Id. at 115, 109 S.Ct. at 956. When such authority is granted, "the highly deferential arbitrary and capricious standard of review is appropriate...." Miller v. Metropolitan Life Ins. Co., 925 F.2d 979, 983 (6th Cir.1991). Decisions of the administrator or fiduciary must be upheld, under the latter standard, if "rational in light of the plan's provisions." Id. at 984, quoting Daniel v. Eaton Corp., 839 F.2d 263, 267 (6th Cir.), cert. denied, 488 U.S. 826, 109 S.Ct. 76, 102 L.Ed.2d 52 (1988).
 
 
 22
 The benefit plan at issue here contains a broad grant of discretionary authority to determine eligibility for benefits and to construe the terms of the plan. Article II, § 2.6, provides in part as follows:
 
 
 23
 "The Administrator shall have the power to make determinations with respect to all questions arising in connection with the administration, interpretation, and application of the Plan. Any such determination by the Administrator shall be conclusive and binding upon all persons. The Administrator may establish procedures, correct any defect, supply any information, or reconcile any inconsistency in such manner and to such extent as it deems necessary or advisable to carry out the purpose of this Plan; provided, however, that any procedure, discretionary act, interpretation or construction shall be done in a nondiscriminatory manner based upon uniform principles consistently applied and shall be consistent with the intent that the Plan shall continue to be a qualified plan under the terms of Code § 401(a), as amended from time to time, and shall comply with the terms of and all Regulations issued pursuant thereto."
 
 
 24
 Notwithstanding this grant of discretionary authority with respect to the interpretation and application of the plan, Mr. Borda argues that the "affected Participant" provision of the plan simply mirrors § 411(d)(3), the "affected employee" provision of the code; that an interpretation of the plan provision is thus an interpretation of the code provision; and that the proper interpretation of the code presents a question of law which the courts must resolve de novo. In this connection Mr. Borda cites Weil v. Retirement Plan Admin. Comm., 913 F.2d 1045, 1048-49 (2d Cir.1990), vacated in part on reh'g, 933 F.2d 106 (1991); Kreis v. Charles O. Townley, M.D. & Assoc., 833 F.2d 74, 78-79 (6th Cir.1987); and Flanagan v. Inland Empire Elec. Workers Pension Plan & Trust, 3 F.3d 1246, 1249 (9th Cir.1993).
 
 
 25
 The defendant trustees respond that Kreis was decided before the Supreme Court issued its decision in Firestone v. Bruch; that plan language often mirrors the language of the code, but this does not negate provisions explicitly empowering plan fiduciaries to interpret plan language; that the Sixth Circuit has repeatedly applied the "arbitrary and capricious" standard in reviewing decisions that were more legal than factual;[2] and that although the question of whether the lower court applied the proper standard of review is a legal issue reviewed by the appellate court de novo--just as the standard of review for summary judgments is de novo, see Flanagan, 3 F.3d at 1248, citing Wang Lab. v. Kagan, 990 F.2d 1126, 1128 (9th Cir.1993)--this court has not hesitated to apply the "arbitrary and capricious" standard in passing judgment on trustee interpretations of plan provisions included in order to meet statutory requirements for qualification. See Lewis v. Plumbers & Pipefitters Nat'l Pension Fund, 91 F.3d 144 (Table), 1996 WL 384540 at * 2 (6th Cir.1996).
 
 
 26
 This debate is somewhat academic, it seems to us, given the proviso by which the plan at issue here limits the discretion of the fiduciaries. Under that proviso--a proviso that had no counterpart in Lewis, as far as the Lewis opinion discloses--any discretionary act or interpretation is required to be "consistent with the intent that the Plan shall continue to be a qualified plan...." As applied to the case before us, we take this to mean that if it were clear as a matter of law that a particular interpretation of the "affected" participant language would result in disqualification of the plan, the trustees would have no discretion to adopt that interpretation.
 
 
 27
 Taking an independent look at the language and purpose of 26 U.S.C. § 411(d)(3), the regulations adopted under § 411 by the Internal Revenue Service (see 26 C.F.R. §§ 1.411(a) through (d), passim ), and the various legal authorities that have been cited to us, we see no reason to conclude that the plan in question here would not be "qualified" if it provided that a former participant who could not be rehired would not be considered "affected" by termination of the plan some years after the termination of his employment.
 
 
 28
 Mr. Borda submits that the purpose of § 411(d)(3) was "to preclude [ ] the possibility that contributions for employees which had been deducted [by an employer] for income-tax purposes may revert back to the employer." Weil, 913 F.2d at 1049, quoting H.R.Rep. No. 378, 87th Cong., 1st Sess. This purpose would be subverted if the trustees' decision were permitted to stand, Borda argues, because the effect of their decision is to let tax deductible employer contributions revert to the employer.
 
 
 29
 We do not find this argument persuasive. The "employer," in this case, is a corporation that no longer exists. The employer's contributions would go not to the corporation, under the trustees' interpretation, but to plan participants--participants who would, of course, be subject to tax on the money when they drew it down. The participants' percentage interests may or may not be identical to the interests that the shareholders had in the professional corporation, but regardless of how the percentages line up, no justification has been offered for piercing the corporate veil in this situation.
 
 
 30
 We have attempted to wend our way through the dense thicket of regulations adopted by the Internal Revenue Service under § 411, and we have found no regulatory language that seems particularly pertinent to our inquiry. None has been cited to us by the parties.
 
 
 31
 Mr. Borda does call to our attention an IRS General Counsel Memorandum, GCM 39310 (April 1, 1994), where the following issue was presented:
 
 
 32
 "Whether a partially vested participant who terminates service and who will not suffer a forfeiture of his nonvested accrued benefits under the terms of a qualified plan until he incurs a one-year break-in-service must be vested in his accrued benefit, to the extent funded, if the plan terminates prior to his incurring a break-in-service."
 
 
 33
 Relying in part on Walsh v. Great Atlantic & Pacific Tea Co., Inc., 96 F.R.D. 632, 651 (D.N.J.) aff'd, 726 F.2d 956 (3d Cir.1983), which explicitly dealt with the effect of plan termination upon "affected former employees," the General Counsel Memorandum concluded that "an employee who separates from service but will not suffer a forfeiture until he incurs a break-in-service will become vested in his accrued benefit, to the extent funded, if the plan terminates prior to his incurring a break-in-service."
 
 
 34
 Implicit in this conclusion, we believe, is an understanding that the employee who had separated from service was one who still stood to be "affected" by the termination of the plan. Nothing in the General Counsel Memorandum suggests that a former employee who would clearly be unable to avoid a forfeiture by returning to work, the employer having gone out of existence, could somehow be "affected" by a termination of the plan at the time of the employer's dissolution.
 
 
 35
 In Flanagan v. Inland Empire Electrical Workers Pension Plan & Trust, 3 F.3d 1246 (9th Cir.1993), the Ninth Circuit recognized that plan participants (defined by the Flanagan plan document in terms that included both employees and former employees) who left their employment before their interests had become vested "[were] protected against forfeiture of benefits on termination of the Plan only if they qualif[ied] as 'affected' participants." Id. at 1249. Unless they were "affected" by the plan's termination, the court went on to say, "their status as participants entitle[d] them to nothing." Id.
 
 
 36
 In Flanagan, as here, the plan document failed to define "affected." But the Ninth Circuit decided that "[t]he plaintiffs clearly were affected by the Plan's termination because it extinguished their opportunity ... to return to covered employment and to revive their prior service credits." Id. at 1250. Had it not been for that circumstance, the court emphasized, the plaintiffs would have been out of luck:
 
 
 37
 "We emphasize that not all former employees became entitled to benefits as a result of the Plan's termination. Only those, like Flanagan and Missett, who had accrued benefits prior to a layoff and who were within a parity period [in which their prior service credits would be revived if they returned to covered employment] are included." Id.
 
 
 38
 Under the Flanagan test, it seems to us, the trustees of the plan before us here were justified in concluding that Mr. Borda was not "affected" by the termination of the plan. Unlike the plaintiffs in Flanagan, Mr. Borda had no prospect at all of being able to revive his past service credits by returning to work with his former employer. One cannot be rehired by a corporation that has ceased to exist.
 
 
 39
 Because the trustees' rejection of Mr. Borda's claim to "affected employee" status does not appear inconsistent with "the intent that the Plan shall continue to be a qualified plan," the proviso which limits the trustees' discretion under § 2.6 of the plan appears to have no application here. That being so, the grant of authority contained in the portion of § 2.6 that precedes the proviso is clearly broad enough to require that we employ the "arbitrary and capricious" standard in reviewing the trustees' determination that the unvested balance in the employer contribution suspense account should be distributed to the plan participants, upon termination of the plan, and not to Mr. Borda.
 
 III
 
 40
 The "arbitrary and capricious" standard, as we have seen, requires that the decision of the defendant trustees be upheld if the decision was rational in light of the plan's provisions. The defendants' decision meets that standard easily, in our view.
 
 
 41
 Deposition testimony taken during the discovery phase of this lawsuit established that having commissioned appropriate legal research before making their decision, the trustees had become familiar with both the Ninth Circuit's opinion in Flanagan, 3 F.3d 1246, and District Judge Avern Cohn's opinion in Bayer, 769 F.Supp. 225. Flanagan, as we have explained, established an "affected employee" test that Mr. Borda could not meet. And Bayer established a test that Mr. Borda could not have met even if he could legitimately have claimed to be an "affected" employee under Flanagan.
 
 
 42
 The plaintiffs in Bayer were former employees whose situations seem to have been comparable to Mr. Borda's except that their employer had not been dissolved when the benefit plan was terminated. The Bayer court held that it was rational for the plan administrator to conclude that the plaintiffs were not "affected" by the plan's termination, given that
 
 
 43
 "(1) [the plaintiffs' employment ended] well before the date of the Plan's termination, (2) there is no evidence their terminations were directly linked to the termination of the Plan, and (3) courts have held, under 26 U.S.C. § 411(d)(3), a person is unaffected by a plan's termination unless either he or she was employed by the plan-sponsoring employer at the time of the plan's termination or his or her discharge was directly linked to the plan's termination. Artz v. Fairbanks Co., 112 F.R.D. 59, 61 (N.D.N.Y.1986); Weil v. Retirement Plan Admin. Comm. for Terson, Co., Inc., 750 F.2d 10, 13 (2nd Cir.1984)." Bayer, 769 F.Supp. at 229-230.
 
 
 44
 The Artz and Weil decisions may not fully support the underlying proposition for which they were cited, but that does not necessarily make the proposition wrong. It bore the endorsement of a district court within this circuit, after all, and the trustees were under no obligation to assume that the result reached by the district court was wrong.
 
 
 45
 It is abundantly clear that Mr. Borda met the Bayer criteria for determining that the employee was not "affected" by the termination of the plan. Borda had voluntarily terminated his employment well before the date of the plan's termination, and the termination of his employment was not linked, even indirectly, to the termination of the plan. It has never been suggested, moreover, that the decisions to dissolve the law firm and terminate the profit sharing plan were taken in order to prevent vesting of the suspense account in Mr. Borda. On the record before us, therefore, we cannot say that it was irrational for the trustees to let themselves be guided by Bayer in the way they did.
 
 
 46
 We recognize that the trustees were necessarily acting under a conflict of interest. The trustees were plan participants themselves, and thus were members of the class to whom the nonvested suspense account would be distributed if not distributed to Mr. Borda. It is well established, however, that this circumstance does not require us to abandon the "arbitrary and capricious" standard of review. Following Brown v. Blue Cross and Blue Shield of Alabama, Inc., 898 F.2d 1556, 1563 (11th Cir.1990), cert. denied, 498 U.S. 1040, 111 S.Ct. 712, 112 L.Ed.2d 701 (1991), this court has said that "the abuse of discretion or arbitrary and capricious standard still applies, but application of the standard should be shaped by the circumstances of the inherent conflict of interest." Miller, 925 F.2d at 984. We are satisfied that we could not overturn the trustees' decision here without bending the standard entirely out of shape.
 
 
 47
 One final matter needs to be addressed briefly. As of December 31, 1994, under the terms of the plan, the forfeiture of the nonvested portion of Mr. Borda's employer contribution account had not been automatically triggered by the passage of time, five years not having elapsed since the termination of Mr. Borda's employment. Because both the plan and the employer were scheduled to terminate at the end of 1994, the trustees chose, in effect, to accelerate the forfeiture date. Given that forfeiture had become inevitable by this time, we do not view the trustees' choice as irrational.
 
 
 48
 The trustees had authority, under § 2.6, to "establish procedures, correct any defect ... or reconcile any inconsistency" in such manner as they deemed necessary or advisable to carry out the purpose of the plan. Because Mr. Borda could not expect to resume his employment with the law firm after the firm's dissolution, it could make no difference to him whether the funds in the suspense account were distributed to the other participants early in 1995 or a year-and-a-half later. Mr. Borda could not get the funds either way, and the procedure established by the trustees was thus not inconsistent with the purpose of the plan. It had no adverse effect at all on Mr. Borda's interests, and Mr. Borda was in no position to complain of a premature distribution of funds that were clearly never going to be his.
 
 
 49
 The judgment entered by the district court is AFFIRMED.
 
 
 
 *
 The Honorable James G. Carr, United States District Judge for the Northern District of Ohio, sitting by designation
 
 
 [1]
 Article I of the plan defines "Participant" as "any eligible Employee who elects to participate...." "Employee" is defined as "any person who is employed by the Employer ...," and "Eligible Employee" is defined as any "Employee" who has completed one year of service and reached his 21st birthday
 
 
 [2]
 In this connection the defendants cite Baker v. United Mine Workers of America Health and Retirement Funds, 929 F.2d 1140 (6th Cir.1991), and Johnson v. Eaton Corp., 970 F.2d 1569 (6th Cir.1992)