839 F.2d 263
 10 Employee Benefits Ca 1197,
10 Employee Benefits Ca 1203,
24 Fed. R. Evid. Serv. 1006
Charles DANIEL, Plaintiff-Appellant,
v.
EATON CORPORATION, et al., Defendants-Appellees.
 No. 86-5664.
 United States Court of Appeals,
Sixth Circuit.
 Argued Dec. 4, 1987.
Decided Feb. 9, 1988.
On Motion for Reconsideration March 17, 1988.
 
 Hollis L. Searcy, argued, Richard L. Masters, Louisville, Ky., for plaintiff-appellant.
 John T. Ballantine, David A. Harris, Ogden, Robertson and Marshall, Louisville, Ky., Harry T. Quick, argued, Benesch, Friedlander, Coplan & Aronoff, Cleveland, Ohio, for defendants-appellees.
 Before LIVELY, Chief Judge, KENNEDY, Circuit Judge, and PECK, Senior Circuit Judge.
 LIVELY, Chief Judge.
 
 
 1
 The plaintiff, Charles Daniel, appeals from a judgment of the district court denying his demand for early retirement benefits from his former employer, defendant Eaton Corporation (Eaton). Because of the unsatisfactory state of the district court record, and procedural missteps, we must remand the case for further proceedings.
 
 I.
 
 2
 Daniel was first hired by Shuler Axle Company of Louisville, Kentucky (Shuler) on January 5, 1953. After several breaks in his employment, Daniel returned to work at Shuler on May 3, 1954, and worked continuously until he was placed on layoff in December 1982. The Louisville plant was closed on February 6, 1983. Shuler employees were represented by the United Auto Workers union (UAW) when Daniel was hired and throughout his employment. Eaton purchased Shuler during Daniel's period of employment, and Daniel was covered by "Pension Plan A-1 of the UAW Master Division" (the Plan) at the time of the Louisville plant's closing. The Plan provided that an employee is eligible for early retirement benefits if he has thirty or more years of "credited service" at the time he elects early retirement.
 
 
 3
 After learning of the plans to close the Louisville plant Daniel applied to Eaton for early retirement benefits. Following discussions between UAW and Eaton, William C. Rommel, the administrator of pensions for Eaton, advised UAW that Daniel had 29.2 years of credited service as of February 6, 1983. Thus, Daniel was not eligible for early retirement benefits under the Plan. The letter from Rommel stated that Daniel was fully vested under the Plan for retirement benefits upon reaching the normal retirement age of 65. Daniel was 49 years old when the plant closed.
 
 
 4
 Daniel objected to Eaton's calculation of 29.2 years of credited service. On June 21, 1983, Richard T. Kennedy of Eaton's employee relations staff wrote Daniel's attorney. In this letter Kennedy enclosed a form for an appeal of Eaton's determination to the Central Board of Administration for the Plan, a body composed of two members appointed by Eaton and two appointed by the UAW. Kennedy also set forth in detail the calculation of Daniel's years of credited past, future and broken service and Eaton's construction of the credited service provisions of the Plan. This letter disclosed that Eaton treated Daniel as a new hire as of May 3, 1954, and that its records designated Daniel a "voluntary quit" as of February 17, 1954, when he had been off work for six months without making a written request to return.
 
 
 5
 On July 7, 1983, Daniel's attorney acknowledged Kennedy's letter and requested copies of the Plan and the collective bargaining agreement in effect between the union and Shuler on February 17, 1954. On April 10, 1984, after Daniel had commenced this action, Kennedy provided a copy of the Plan to Daniel's attorney and advised that he had been unable to locate a copy of the collective bargaining agreement in effect in 1954.
 
 II.
 A.
 
 6
 Daniel filed suit on April 6, 1984, naming Eaton Corporation, Mellon Bank, Trustee under the plan and Richard T. Kennedy as defendants. The only basis of jurisdiction set forth in the complaint is section 502(e) of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. Sec. 1132(e) (1982). Daniel recited his dispute with Eaton over credited service and alleged that after Eaton had denied his application for early retirement benefits, he submitted an appeal on September 1, 1983, to the Central Board of Administration, but that no action had been taken on his appeal. In the complaint, Daniel stated that Richard T. Kennedy "has been an administrator of Pension Plan A-1."
 
 
 7
 In Count I of the complaint Daniel sought recovery from Eaton and Mellon Bank of all past due benefits with interest, and an order requiring Eaton and Mellon "to instate" Daniel as a beneficiary with a monthly pension of $935 and all fringe benefits provided under the Plan. In Count II Daniel asked the court to require Eaton and Kennedy to pay him a penalty of $100 per day pursuant to Sec. 502(c)[1] of ERISA for failure to furnish a copy of the Plan within 30 days of his request. He also prayed for an award of attorney's fees and a jury trial.
 
 
 8
 In their amended answer the defendants admitted that Daniel was first hired on January 5, 1953, and was a participant in the Plan, but denied any wrongful acts or that their calculations were incorrect. They admitted that Kennedy had been an administrator of the Plan, but stated that he was no longer administrator. The answer also asserted affirmative defenses based on the alleged requirements of the 1954 collective bargaining agreement between Shuler and UAW that an employee in layoff status must make a written request to return to work every six months, and the Kentucky Statute of Limitations.
 
 B.
 
 9
 Section 502(a)(1)(B) of ERISA provides that a participant or beneficiary of a plan may bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan[.]" Although Daniel cited section 502(a)(1)(B) in Count I, it is clear that he sought to recover from Eaton as his employer, not as the Plan administrator. The only reference to the Plan administrator is in Count II. In effect, Daniel sought to recover from Eaton for breach of contract, and this was the basis of his demand for a jury. Daniel also argued in the district court that Eaton was estopped to deny his entitlement to early retirement benefits on the basis of alleged activities of Shuler representatives during his layoff between August 17, 1953, and May 3, 1954. This argument is repeated on appeal.
 
 
 10
 The Plan provides for administration by the Central Board of Administration, heretofore referred to, and a Local Pension Committee at each plant, also consisting of four members, two each named by Eaton and the union. On February 28, 1983, the Local Pension Committee of the Louisville plant calculated Daniel's credited service as 29.2 years and authorized a deferred vested pension of $531.44 per month at age 65. (Plaintiff's Exhibit 4). This reflected the decision referred to in Rommel's letter of February 17th. Daniel appealed the determination of 29.2 years of credited service to the Central Board of Administration, but the appeal was never acted upon.
 
 C.
 
 11
 The complaint did not name either the Local Pension Committee or the Central Board of Administration as a defendant. In Barrett v. Thorofare Markets, 452 F.Supp. 880 (W.D.Pa.1978), an action against the plaintiff's former employer for wrongful denial of early retirement benefits was dismissed on the employer's motion as having named the wrong party defendant. The court held that the pension committee was the only proper defendant against whom relief could be granted. The committee was responsible for administering and interpreting the plan and was solely responsible for a denial of benefits. Id. at 884. Unless an employer is shown to control administration of a plan, it is not a proper party defendant in an action concerning benefits. Boyer v. J.A. Majors Company Employees' Profit Sharing Plan, 481 F.Supp. 454, 457-58 (N.D.Ga.1979). See also Foulke v. Bethlehem 1980 Salaried Pension Plan, 565 F.Supp. 882 (E.D.Pa.1983) (employer's motion to dismiss denied because of evidence that it had taken an active part in administration of the plan).
 
 
 12
 Eaton did not seek dismissal of Daniel's claims against it. Instead, it advised the district court in a trial brief that "the only proper defendant here is Eaton Corporation as Plan Administrator." Although the record contains no inkling of how administration of the Plan was taken over by Eaton from the local Pension Committee and the Central Board of Administration, the district court and the parties proceeded on the basis of treating Eaton as the administrator.
 
 III.
 A.
 
 13
 We consider the Count I claim first. To the extent that Daniel sought recovery from Eaton for breach of contract or on the theory of promissory estoppel, such claims are preempted by ERISA, since these claims "arise from the administration of [the Plan]." Blakeman v. Mead Containers, 779 F.2d 1146, 1151 (6th Cir.1985); Ellenburg v. Brockway, Inc., 763 F.2d 1091, 1095 (9th Cir.1985). With certain exceptions not material here, state law actions related to employee benefit plans are preempted by ERISA. Section 514(a), 29 U.S.C. Sec. 1144(a). Common law causes of action are preempted whether the state laws are specifically designed to affect employee benefit plans or not. Pilot Life Insurance Co. v. Dedeaux, --- U.S. ----, 107 S.Ct. 1549, 1553, 95 L.Ed.2d 39 (1987). ERISA embodies a comprehensive civil enforcement scheme with respect to claims for employment benefits which "represents a careful balancing of the need for prompt and fair claims settlement procedures against the public interest in encouraging the formation of employee benefits plans." 107 S.Ct. at 1556. The preemption provision is integral to this scheme.
 
 
 14
 In view of Eaton's acceptance of responsibility for denial of Daniel's claim, the district court treated the entire action as one under ERISA and Eaton as the Plan's fiduciary acting through the Local Pension Committee and the Central Board of Administration.[2] However, instead of reviewing the denial of benefits by the administrator under an arbitrary and capricious standard, the district court granted the parties' request for a trial de novo. This was error. A plan administrator has broad discretion in deciding questions of coverage and eligibility for benefits. This court has held repeatedly that the appropriate determination in reviewing the decision of a plan administrator with respect to a claim for benefits is whether the decision was arbitrary, capricious, made in bad faith or otherwise contrary to law. E.g., Adcock v. Firestone Tire and Rubber Co., 822 F.2d 623, 626 (6th Cir.1987); Blakeman, 779 F.2d at 1149; Moore v. Reynolds Metals Co. Retirement Program, 740 F.2d 454, 457 (6th Cir.1984). We have specifically rejected arguments that de novo review is proper. Adcock, 822 F.2d at 626; cf. Crews v. Central States, etc. Pension Fund, 788 F.2d 332, 336 (6th Cir.1986).
 
 
 15
 The arbitrary and capricious standard of review is applied to these cases in order to avoid "excessive judicial interference with plan administration." Cook v. Pension Plan for Salaried Employees, 801 F.2d 865, 870 (6th Cir.1986) (quoting Miles v. New York State Teamsters Conference Pension and Retirement Fund Employee Pension Benefit Plan, 698 F.2d 593, 599 (2d Cir.), cert. denied, 464 U.S. 829, 104 S.Ct. 105, 78 L.Ed.2d 108 (1983)). As Judge Engel pointed out in Cook, this deferential standard is applied "in the interest of efficient pension administration." 801 F.2d at 871. Each application for benefits implicates the rights of other members of a plan, and the plan administrator views each case from this perspective. By upholding the decisions of an administrator that are rational in light of the plan's provisions and thus not arbitrary or capricious, the courts contribute to consistency and fairness in plan administration.
 
 B.
 
 16
 The district court's agreement to the parties' request for a de novo trial was apparently grounded on the fact that the Central Board of Administration failed to render a decision on Daniel's appeal. Daniel sufficiently exhausted his administrative remedies by filing an appeal. However, the failure of the Central Board of Administration to act on his appeal did not give rise to a de novo action. Regulations of the Secretary of Labor promulgated pursuant to section 503 of ERISA, 29 U.S.C. Sec. 1133, contain the following provisions:
 
 
 17
 (h) Decision on review. (1)(i) A decision by an appropriate named fiduciary shall be made promptly, and shall not ordinarily be made later than 60 days after the plan's receipt of a request for review, unless special circumstances (such as the need to hold a hearing, if the plan procedure provides for a hearing) require an extension of time for processing, in which case a decision shall be rendered as soon as possible, but not later than 120 days after receipt of a request for review.
 
 
 18
 29 C.F.R. Sec. 2560.503-1(h)(1)(i).
 
 
 19
 (4) The decision on review shall be furnished to the claimant within the appropriate time described in paragraph (h)(1) of this section. If the decision on review is not furnished within such time, the claim shall be deemed denied on review.
 
 
 20
 29 C.F.R. Sec. 2560.503-1(h)(4).
 
 
 21
 The Supreme Court stated in Massachusetts Mutual Life Insurance Co. v. Russell, 473 U.S. 134, 144, 105 S.Ct. 3085, 3091, 87 L.Ed.2d 96 (1985), that this latter provision "enables a claimant to bring a civil action to have the merits of his application determined, just as he may bring an action to challenge an outright denial of benefits." When a review body fails to act and the claim is deemed denied on review, "[a] claimant's appropriate recourse is then to seek review of the denial by the district court." Folke v. Schaffer, 616 F.Supp. 1322, 1330 (D.Del.1985). However, the standard of review is no different whether the appeal is actually denied or is deemed denied. The role of the district court is the same in either event. That role was described by the court in Wardle v. Central States, Southeast and Southwest Areas Pension Fund, 627 F.2d 820, 824 (7th Cir.1980), cert. denied, 449 U.S. 1112, 101 S.Ct. 922, 66 L.Ed.2d 841 (1981), as follows:
 
 
 22
 A federal court is to focus on the evidence before the trustees at the time of their final decision and is not to hold a de novo factual hearing on the question of the applicant's eligibility. Phillips v. Kennedy, 542 F.2d 52, 54 (8th Cir.1976). As a general matter a court should not resolve the eligibility question on the basis of evidence never presented to a pension fund's trustees but should remand to the trustees for a new determination. See id. at 55 & n. 10; Sturgill v. Lewis, 372 F.2d 400 (D.C.Cir.1966); Pickett v. UMW Health & Retirement Funds, 467 F.Supp. 2 (E.D.Tenn.1978); Ruth v. Lewis, 166 F.Supp. 346, 349 (D.D.C.1958).
 
 
 23
 (Footnote omitted).
 
 
 24
 In addition to the formal action of the Local Pension Committee, the record before the district court included the detailed explanation of reasons for denial of Daniel's application contained in Kennedy's letter of June 21, 1983, together with Daniel's employment records, a copy of the Plan, and the 1954 collective bargaining agreement which Eaton filed during the district court proceedings, although it is not clear whether the latter document was considered by the Local Pension Committee in its initial determination. The denial should have been reviewed by the district court under an arbitrary and capricious standard, taking into account the entire record before the administrator at the time of the determination that Daniel was not entitled to early retirement benefits.
 
 C.
 
 25
 Daniel argues on appeal that the district court erred in denying his demand for a jury and in admitting into evidence an unauthenticated copy of the collective bargaining agreement in force between Shuler and UAW at the time of Daniel's 1953-54 layoffs and return to work. Having determined that Daniel's common law claims were preempted by ERISA, we conclude that the district court properly denied Daniel's demand for a jury. Although there may be actions under ERISA in which a jury trial is proper, in actions for recovery of benefits under section 502, "there is no right to a jury trial." Crews, 788 F.2d at 338; Foulke, 565 F.Supp. at 883.
 
 
 26
 With respect to the collective bargaining agreement, if this agreement was not considered by the administrator in denying Daniel's claim, it should not have been considered by the court. If, however, the agreement was part of the record relied upon in making the original determination that Daniel did not qualify for early retirement benefits, we believe there were sufficient indicia of trustworthiness to make the copy admissible. Fed.R.Evid. 803(6) and (24).
 
 IV.
 
 27
 The claim under Count II and the prayer for an attorney's fee were addressed to the district court's discretion. Section 502(c) provides that the administrator "may in the court's discretion" be liable to a plan participant or beneficiary "in the amount of up to $100 a day" for failure or refusal to comply with a request for information that the administrator is required to furnish. 29 U.S.C. Sec. 1132(c). Section 502(g) provides that a district court "in its discretion may allow a reasonable attorney's fee" in any action under the subchapter of ERISA which includes section 502.29 U.S.C. Sec. 1132(g).
 
 
 28
 The district court awarded Daniel $25 per day for 278 days ($6,950) for Eaton's failure to supply a copy of the Plan as he had requested. Eaton has not appealed this award, but Daniel maintains that he was entitled to the full amount authorized by the statute--$100 per day. The district court accepted Eaton's explanation that the failure to respond to Daniel's request was not deliberate, but resulted from neglect or misfeasance. Further, the record casts doubt on any claim of prejudice to Daniel by reason of the delay. The complaint was filed before the Plan was furnished, and after receiving the copy, the complaint was not amended. From this it appears that Daniel and his attorney had sufficient information to proceed without the copy. Obviously, Eaton should have responded promptly, and the district court assessed a penalty for Eaton's failure to do so. We cannot say that the district court abused its discretion in making an award that was below the statutory minimum.
 
 
 29
 The district court concluded that it would not be appropriate to award an attorney's fee since Daniel failed to prevail on his principal theory of recovery. Since we are remanding for a review of the record under a standard not originally applied by the district court, the result may be different on the Count I claim. Thus, we vacate the denial of an attorney's fee, and direct that this issue be reconsidered in light of the district court's determination of the Count I claim following remand.
 
 
 30
 Except for the award under Sec. 502(c), which is affirmed, the judgment of the district court is vacated and the case is remanded for further proceedings consistent with this opinion. Eaton will bear the costs of this appeal.
 
 On Motion for Reconsideration
 
 31
 The appellees have filed a document styled, 'Motion for Reconsideration and BRIEF in Support of Appellee' in which they request the court to reconsider its original decision filed February 9, 1988, and issue an order remanding this case to the district court with directions to enter judgment in favor of Eaton Corporation. Upon consideration of the motion and brief, the court concludes that it neither overlooked nor misconstrued any issue in this case and, accordingly, the motion is denied. The fact that the district court applied a standard requiring greater deference to the administrator's determination than that directed to be applied by this court's decision is not determinative. The district court must apply the prescribed standard to a proper administrative record and its first duty on remand is to determine whether such a record exists, and if so, whether that record was before it upon the original submission.
 
 
 32
 The motion is denied.
 
 
 
 [1]
 Section 502(c), 29 U.S.C. Sec. 1132(c), provides:
 (c) Administrator's refusal to supply requested information
 Any administrator (1) who fails to meet the requirments of paragraph (1) or (4) of section 1166 of this title with respect to a participant or beneficiary, or (2) who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper.
 
 
 [2]
 Though designated as "trustee" in the Plan, Mellon Bank was actually only the depository of pension funds and the paying agent. It had no responsibility for determining entitlement to or amounts of benefits