**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

JOHN W. GLUTH,
Plaintiff-Appellee,

v.

WAL-MART STORES, INCORPORATED;
WAL-MART STORES INCORPORATED
ASSOCIATES HEALTH AND WELFARE
     No. 96-1307
TRUST,
Defendants-Appellants,

and

WAL-MART GROUP HEALTH PLAN,
Appellant.

Appeal from the United States District Court
for the District of South Carolina, at Rock Hill.
Matthew J. Perry, Jr., Senior District Judge.
(CA-93-2682)

Argued: May 5, 1997

Decided: July 3, 1997

Before MURNAGHAN and HAMILTON, Circuit Judges, and
LEGG, United States District Judge for the District of Maryland,
sitting by designation.

_____

Vacated and remanded with instructions by unpublished per curiam
opinion.

**COUNSEL**

**ARGUED:** Ashley Bryan Abel, ABEL & HENDRIX, P.A., Spartanburg, South Carolina, for Appellants. Stonewall Jackson Kimball, III,
KIMBALL, DOVE & SIMPSON, P.A., Rock Hill, South Carolina,
for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

At age fifty-seven, John Gluth (Gluth) underwent emergency surgery on December 30, 1992, to remove a significant portion of his prostate gland in order to relieve urine retention in the urinary tract caused by benign prostatic hypertrophy (BPH).[1] Gluth subsequently filed a claim for payment of medical expenses related to his surgery under the health care benefits plan sponsored by his employer, Wal-Mart Stores, Inc. (Wal-Mart). The parties agree that such plan, entitled the Wal-Mart Associates' Group Health Plan (the Plan), is subject to the provisions of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001 to 1461. The Plan's administrator is an administrative committee (the Administrative Committee), which under the terms of the Plan had discretion to make benefit decisions and to interpret the terms of the Plan. The Administrative Committee denied Gluth's claim under the provision of the Plan that excluded coverage of medical expenses for any illness, injury or symptom (including secondary conditions and complications) that was medically documented as existing during the twelve months preceding the participant's effective date of coverage.

_____
[1] The prostate gland of one who suffers from BPH enlarges sufficiently to compress the urethra and cause some overt urinary obstruction, resulting in urinary retention.

2

Contending that the Administrative Committee abused its discretion by denying his claim, Gluth filed this action against Wal-Mart seeking review of that decision. See 29 U.S.C. § 1132(a)(1)(B). After a bench trial, the district court concluded that the Administrative Committee abused its discretion in denying Gluth's claim and entered judgment in his favor for payment of the medical expenses related to his surgery. The district court also awarded Gluth attorney's fees and costs. See 29 U.S.C. § 1132(g)(1).

After the district court entered judgment, Gluth moved to add the Wal-Mart Group Health and Welfare Trust (the Trust) **2** as a defendant. The district court granted the motion. Wal-Mart and the Trust filed a timely appeal. For reasons that follow, we vacate the district court's judgment in favor of Gluth, the district court's award of attorney's fees and costs in favor of Gluth, and the order adding the trust as a defendant, and remand with instructions.

I.

On February 18, 1992, Dr. Robert Lindemann (Dr. Lindemann), a specialist in internal medicine and Gluth's personal physician, conducted a routine physical examination of Gluth. Although Gluth did not expressly relate any symptoms of urinary tract obstruction or urine retention or any symptoms indicative of any prostate gland illness during the examination, a digital rectal examination performed by Dr. Lindemann indicated a slight enlargement of Gluth's prostate gland. Specifically, the digital rectal examination gave a reading of BPH 1+, with the 1+ indicating the slight enlargement. A prostate gland specific antigen (PSA) test, which is a test used to diagnose prostate cancer in its earliest stages, showed that Gluth had an elevated PSA level of 7.1. An elevated PSA level may be caused by an enlarged prostate gland. Concerned by the results of the PSA test, Dr. Lindemann referred Gluth to a urologist, Dr. W. D. Livingston (Dr. Livingston), for evaluation, which evaluation did not take place until October 1, 1992. Gluth began working for Wal-Mart nearly two months after Dr. Lindemann examined him. **3**  Gluth subsequently

_____
**2** The trust funded the Plan.
**3** Gluth actually worked for Sam's Wholesale Club, a division of Wal-

Mart.

3

obtained health care coverage under the Plan, effective July 12, 1992.
The Plan, by its terms, excluded coverage of medical expenses for any illness that existed within the twelve months preceding a partici-
pant's effective date of coverage. Specifically, the Plan provided that:

> Any charge with respect to any PARTICIPANT for any ILLNESS, INJURY OR SYMPTOM (including secondary conditions and complications) which was medically docu-mented as existing, or for which medical treatment, medical service, or other medical expense was incurred within 12 months preceding the EFFECTIVE DATE of these benefits as to that PARTICIPANT, shall be considered PRE-EXISTING and shall not be eligible for benefits under this Plan, until the PARTICIPANT has been continuously cov-ered by the Plan 12 CONSECUTIVE months.

(J.A. 32).

Dr. Lindemann subsequently filed a medical expense form with the Plan on behalf of Gluth for payment of medical expenses related to his February 18, 1992 examination of Gluth. In making this filing, Dr.
Lindemann coded Gluth's claim as "600" under the International Classification of Diseases (ICD). Under the ICD, code 600 includes, among other diseases, benign prostate gland enlargement.

On September 23, 1992, Dr. Christian Magura (Dr. Magura), a urologist, examined Gluth at a prostate cancer screening clinic. Dr.
Magura's digital rectal examination of Gluth showed a 2+ increase in
his BPH reading. Furthermore, Gluth related to Dr. Magura that within the preceding six months he had experienced a strong need to urinate with little or no urine coming out, a symptom of BPH. Part of that time period preceded Gluth's effective date of coverage. As did Dr. Lindemann in February of 1992, Dr. Magura also referred Gluth to Dr. Livingston, a urologist, for further examination. Dr. Liv-
ingston's notes from his examination of Gluth on October 1, 1992, indicate that Gluth related symptoms of BPH, but did not specify how
long he had been experiencing such symptoms.

By December 26, 1992, Gluth's prostate gland had enlarged to such an extent that it caused him acute urinary retention, necessitating

4

a trip to the emergency room of a nearby hospital. Four days later, Dr. Magura surgically removed a large portion of Gluth's prostate gland to alleviate the urinary retention. Dr. Magura's pre and post operative reports show that he gave Gluth a pre and post operative diagnosis of BPH and urinary retention.

The Plan initially denied Gluth's claim for medical expenses related to his surgery on the basis that they were for an illness, BPH, that was medically documented as existing within the twelve months preceding Gluth's effective date of coverage. Gluth appealed to the Administrative Committee.[4] As part of its review, the Administrative Committee requested an expert medical opinion regarding the merits of Gluth's claim from Dr. James Arkins (Dr. Arkins), a member of the Plan's medical advisory council.[5]

Dr. Arkins practices family medicine and has nineteen years experience treating mostly persons over fifty years of age. He reviewed Gluth's complete claim file. The file included most of Gluth's medical records and benefit claim forms, including Dr. Lindemann's report of his February 18, 1992 examination of Gluth and Dr. Magura's pre and post operative reports.[6] He also reviewed the language of the Plan that excluded preexisting illnesses. Based on: (1) his interpretation of Dr. Lindemann's February 18, 1992 report as diagnosing Gluth with BPH;[7] (2) Dr. Lindemann's referral of Gluth to a urologist due to an

_____

[4] Under the terms of the Plan, the Administrative Committee served as its administrator and had discretionary authority to resolve all questions concerning the administration, interpretation or application of the Plan, including, without limitation, discretionary authority to determine eligibility for benefits or to construe the terms of the Plan in conducting the review of an appeal.

[5] Under the Plan, its medical advisory council was "[t]he group of medical practitioners appointed by the Administrative Committee to assist in the review of medical claims as and when medical expertise is needed." (J.A. 405).

**6** Apparently, the claim file did not contain a copy of Dr. Magura's report from his September 23, 1992 examination of Gluth. Thus, the claim file did not contain a record documenting Gluth's complaint on that date that within the preceding six months he had experienced a strong need to urinate with little or no urine coming out.

**7** Dr. Arkins reasoned that Dr. Lindemann would not have noted a BPH 1+ reading from his digital rectal examination of Gluth, if he did not con-sider Gluth to be suffering from BPH at the time.

5

elevated PSA, where an elevated PSA can be the result of prostate gland enlargement; (3) a review of the other medical records (including pre and post operative diagnosis by Dr. Magura of BPH and urinary retention); (4) the medical relationship between BPH and urinary retention; and (5) his medical training in general and experience in treating men over fifty years of age; Dr. Arkins reported to the Administrative Committee that the medical expenses related to Gluth's surgery were for an illness, BPH, that had been medically documented as existing during the twelve months preceding Gluth's effective date of coverage. As a result of its own review of Gluth's claim file and its consideration of Dr. Arkins' opinion, the Administrative Committee affirmed the initial denial of Gluth's claim. In doing so, the Administrative Committee interpreted the term "illness," as used in the Plan, to include BPH.

At trial, the district court considered the evidence that was before the Administrative Committee when it affirmed the initial denial of Gluth's claim for benefits. The district court also considered evidence that was not before the Administrative Committee. For example, the district court heard and considered the testimony of Dr. Lindemann that he did not intend his recording of a BPH 1+ reading from his digital rectal examination of Gluth to indicate that Gluth suffered from an illness. The district court also heard and considered testimony by Dr. Magura on what the district court considered the ultimate issue in the case--whether Gluth suffered from any illness, injury or symptom (including secondary conditions and complications) medically documented as existing or for which medical treatment, medical service or other medical expense was incurred within the twelve months preceding Gluth's effective date of coverage. According to Dr. Magura's trial testimony, Gluth did not so suffer. Wal-Mart objected at trial to the district court's admission of this testimony.

After consideration of all of the evidence, the district court concluded that the Administrative Committee had abused its discretion in denying Gluth's claim for medical expenses related to his December 30, 1992 surgery. According to the district court, the abuse of discre-

tion stemmed from denying benefits on a record that lacked substantial evidence that Gluth had suffered from any illness, injury or symptom (including secondary conditions and complications), which was medically documented as existing, or for which he received med-

6

ical treatment, medical service, or incurred other medical expense within the twelve months preceding his effective date of coverage. Instead, the district court stated, "there were the opinions of two doctors Dr. Lindemann, the examining doctor on February 18, 1992 and Dr. Magura, a urologist, who both testified that Mr. Gluth's BPH and PSA level were not pre-existing conditions to the acute urinary retention." (J.A. 44) (emphasis added). The district court concluded that it was unreasonable for the Administrative Committee to rely on Dr. Arkins' interpretation of Gluth's medical records "when it is evident that Dr. Arkins and Dr. Lindemann use the term BPH differently and according to Dr. Lindemann his diagnosis of Mr. Gluth as having BPH did not mean that the prostate gland was an abnormal size nor did it mean that Mr. Gluth had any symptom of prostate illness or urinary tract illness." (J.A. 44-45). The district court ultimately entered judgment in favor of Gluth, ordering that Gluth "be paid his benefits for surgery, hospitalization, and related treatment under the [Plan]." (J.A. 3); see 29 U.S.C. § 1132(a)(1)(B). The district court also awarded Gluth $30,910.00 in attorney's fees and costs, see 29 U.S.C. § 1132(g)(1), and granted Gluth's opposed motion to add the Trust as a defendant.

II.

At the outset of our review of the district court's decision, we must be mindful of the appropriate standard for judicial review of a decision by the administrator of an ERISA benefits plan to deny a claim for benefits. Unless an ERISA benefits plan expressly gives its administrator discretionary authority to determine eligibility for benefits or to construe its terms, a reviewing court uses a de novo standard of review. See Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 114-15 (1989). If an ERISA benefits plan does give its administrator discretionary authority to determine eligibility for benefits or to construe its terms, a reviewing court may only reverse the denial of benefits upon a conclusion that the administrator abused its discretion. See

id. at 111; <u>Bernstein v. Capital Care, Inc.</u>, 70 F.3d 783, 787 (4th Cir. 1995). Under the abuse of discretion standard of review, a reviewing court should not disturb the administrator's decision if it is reasonable. <u>See id.</u>; <u>De Nobel v. Vitro Corp.</u>, 885 F.2d 1180, 1187 (4th Cir. 1989). The decision of a plan administrator is reasonable if the decision is: (1) "`the result of a deliberate, principled reasoning process'"

7

and (2) "`supported by substantial evidence.'" <u>Bernstein</u>, 70 F.3d at
787 (quoting <u>Baker v. United Mine Workers of Am. Health & Retire-</u>
<u>ment Funds</u>, 929 F.2d 1140, 1144 (6th Cir. 1991)). Finally, when
reviewing a plan administrator's decision under the abuse of discre-
tion standard, a court may consider only the record that was before
the plan administrator at the time the plan administrator reached its
decision. <u>See Shepard v. Enoch Pratt Hosp. v. Travelers Ins. Co.</u>, 32
F.3d 120, 125 (4th Cir. 1994).

The parties do not dispute that the Plan gave the Administrative
Committee discretionary authority to make benefit eligibility deci-
sions and to construe the terms of the Plan. Accordingly, the district
court was bound to review the Administrative Committee's decision
to deny Gluth's claim for abuse of discretion, which it did. Thus,
Gluth's eligibility for benefits turns on whether the Administrative
Committee abused its discretion in denying Gluth's claim on the basis
that his medical expenses were for an illness, BPH, that was medi-
cally documented as existing within the twelve months preceding
Gluth's effective date of coverage.

On appeal, Wal-Mart and the Trust (collectively the appellants)
contend that the district court erred in concluding that the Administra-
tive Committee abused its discretion in denying Gluth's claim. In this
regard, the appellants specifically challenge the district court's con-
clusion that the record before the Administrative Committee lacked
substantial evidence that Gluth's medical expenses were for an illness
that was medically documented as existing within the twelve months
preceding Gluth's effective date of coverage. As part of this chal-
lenge, the appellants contend the district court erroneously considered
and relied upon evidence that was not before the Administrative Com-
mittee. We agree with the appellants on these points.

Initially, we note that the district court erred as a matter of law by
considering and relying upon Dr. Lindemann's trial testimony inter-
preting his own report as not diagnosing Gluth with BPH and Dr.
Magura's trial testimony that Gluth did not suffer from any illness,
injury or symptom medically documented as existing within the
twelve months preceding Gluth's effective date of coverage. Neither

Dr. Lindemann's nor Dr. Magura's testimony was before the Administrative Committee at the time that it decided to deny Gluth's claim.

8

Although it may be appropriate for a court conducting a _de novo_ review of a plan administrator's decision denying benefits to consider evidence that was not taken into account by the plan administrator, when a court is constrained to review a plan administrator's decision denying benefits under the abuse of discretion standard, consideration of evidence not before the plan administrator is proscribed. _See Shepard_, 32 F.3d at 125.

When reviewed within the proper scope, the reasonableness of the Administrative Committee's decision to deny Gluth's claim is undeniable. First, rather than relying on its own experience in reviewing the merits of claims for medical expenses, the Administrative Committee sought and obtained the opinion of a medical professional who had experience treating men over fifty. This evinces a principled approach by the Administrative Committee to reviewing the merits of Gluth's claim. _See Bernstein_, 70 F.3d at 788. Thus, the first requirement of the "reasonableness" standard is met.

Second, the Administrative Committee's decision is supported by substantial evidence, satisfying the second requirement of the "reasonableness" standard. _See id._ The Supreme Court has defined substantial evidence as "`such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" _Richardson v. Perales_, 402 U.S. 389, 401 (1971) (quoting _Consolidated Edison Co. of New York v. NLRB_, 305 U.S. 197, 229 (1938)). Here, Gluth's claim file contained a medical report dated within the twelve months preceding Gluth's effective date of coverage that noted a BPH 1+ reading from a digital rectal examination. The same report noted an elevated PSA level, with such elevation potentially caused by an enlarged prostate gland and a recommendation that Gluth see a urologist at his earliest convenience due to his elevated PSA level. The claim file also showed that Dr. Lindemann used ICD Code 600, when ICD Code 600 includes benign prostate gland enlargement as a disease. The claim file further showed that Dr. Magura had made a pre and post operative diagnosis of BPH and urinary retention. Finally, the claim file contained Dr. Arkins' professional medical opinion that the medical records contained in the claim file documented that Gluth suffered from an illness, BPH, during the twelve months preceding his effective date of coverage that ultimately necessitated the removal of a large portion of his prostate gland. We have no doubt that a rea-

sonable mind might accept this evidence as adequate to support the conclusion that Gluth's medical expenses were for an illness, BPH, that was medically documented as existing during the twelve months preceding his effective date of coverage. This is especially true in light of the Administrative Committee's authority under the Plan to interpret the meaning of terms in the Plan such as "illness."

In sum, the district court erred as a matter of law in considering evidence not before the Administrative Committee and in ultimately concluding that the Administrative Committee had abused its discretion in denying Gluth's claim for medical expenses related to his surgery.

III.

We next address the Trust's challenge to the district court's grant of Gluth's opposed motion to amend the complaint post judgment to name it as a defendant. The record is unclear as to why Gluth made such a motion and why the district court granted it over Wal-Mart's objection. Suffice it to say that the district court erred in granting Gluth's motion, because the Trust, as the funding mechanism for the Plan with no control over its administration, is not a proper defendant in this action. See Gelardi v. Pertec Computer Corp., 761 F.2d 1323, 1324-25 (9th Cir. 1985) (ERISA permits suits to recover benefits only against the employee benefits plan as an entity).[8]

IV.

In conclusion, we vacate the district court's judgment in favor of Gluth, the district court's award of attorney's fees and costs in favor

---

[8] We note that Gluth named the wrong defendant from the beginning by initially bringing this action against his employer, Wal-Mart, who had no control over the administration of the Plan. See Daniel v. Eaton Corp., 839 F.2d 263, 266 (6th Cir. 1988) (unless an employer is shown to control administration of an employee benefit plan, it is not a proper defendant in an ERISA action seeking benefits; rather, the plan is the proper party). However, because Wal-Mart proceeded in the litigation without moving for dismissal on that basis, Wal-Mart waived its right to chal-

lenge the propriety of Gluth naming it as a defendant.  <u>See id.</u>

10

of Gluth and the district court's order adding the Trust as a defendant and remand with instructions to enter judgment in favor of Wal-Mart and the Plan.**9**

VACATED AND REMANDED WITH INSTRUCTIONS

MURNAGHAN, Circuit Judge, concurring:

While I concur in the judgment as validly expressing the current law, it comes to a sorry result bearing in mind ERISA's concern with protecting the interests of plan participants such as Gluth. At trial, the urologist physicians who treated Gluth related their conclusions that at the time of Dr. Lindemann's examination of Gluth, Gluth did not suffer from the BPH illness, but rather suffered from only benign prostrate enlargement, which at Gluth's age was not unusual. Crediting Dr. Lindemann's and Dr. Magura's testimony, the district court found that Gluth did not suffer from a preexisting illness as defined under the terms of the Plan. Rather, Gluth's acute urinary retention was an initial condition, not a secondary condition as a result of his BPH. Notably, the testimony at trial, particularly from Drs. Lindemann and Magura based on their examinations and treatment of Gluth far outweighed Dr. Arkins', a non-urologist, conclusion that Gluth suffered from a preexisting illness based on Dr. Arkin's 2-3 minute review of Gluth's medical file.

Notwithstanding the above, the majority opinion is anchored on the premise that Gluth did not offer any of the explanations of the sort offered by Gluth at trial to the Administrative Committee at the time

_____
**9** Gluth moves on appeal to amend his complaint to add the Plan as a defendant. Presumably, this motion was in response to Wal-Mart's argument on appeal that the judgment and the award of attorney's fees and costs should be vacated and the case dismissed due to his suing it rather than the Plan. See Daniel, 839 F.2d at 266 (6th Cir. 1988).

In an effort to avoid Gluth bringing this same action against the Plan, we grant Gluth's motion on appeal to name the Plan as a defendant. See

Fed. R. Civ. P. 21 ("Parties may be dropped or added by order of the
court on motion of any party or of its own initiative at any stage of the
action and on such terms that are just."). We believe, in the circum-
stances of this case, granting Gluth's motion is just. <u>See id.</u>

11

the Committee reviewed his file and ultimately decided to deny benefits. Thus, reliance is placed on failure of proof before the Administrative Committee to reach a result most likely, as the district court found, incorrect in fact. The apparent incorrectness emerged when the case was tried. I do not contend, however, that the majority opinion conveys the law inaccurately in this area. Application of that law leads to the inescapable conclusion that an Administrative Committee's most likely incorrect decision can outweigh the federal district judge's likely correct decision evidenced at the time of trial provided the Administrative Committee has not abused its discretion in denying benefits. In the instant case, I concur that the evidence before the Administrative Committee at the time of its consideration of Gluth's application adequately supports the Committee's decision to deny benefits. As I stated at the outset of my concurrence, while the result is apparently legally proper, the unfortunate result does not coincide with ERISA's objective that an honest, hard-working employee should receive health benefits when genuinely needed.

12