**Cheryl BUHA, Plaintiff–Appellant,**

v.

**UNITED FOOD AND COMMERCIAL WORKERS INTERNATIONAL UNION–INDUSTRY PENSION FUND Defendants–Appellees.**

**No. 02–1389.**

United States Court of Appeals, Sixth Circuit.

Oct. 3, 2003.

Before SUHRHEINRICH, COLE, and ROGERS, Circuit Judges.

ROGERS, Circuit Judge.

Cheryl Buha developed debilitating hand and wrist problems after working for the same company for almost three decades. Although she eventually received social security disability benefits, the United Food and Commercial Workers International Union–Industry Pension Fund ("Fund") denied her application for disability benefits under their pension plan because the Fund determined that she was not disabled at the time she left employment. Buha sued to obtain review of the Fund's denial, and the district court granted summary judgment in Buha's favor. The Fund appeals this decision. Because the Fund's determination was not arbitrary or capricious, we reverse the judgment of the district court.

**Facts**

Buha worked at Kroger Supermarkets for 29 years, operating the cash register, packing grocery bags, and stocking shelves. In 1986 Buha began complaining of pain in her wrists and hands. By March 6, 1995, her hand problems had deteriorated such that she was no longer able to work.

On September 19, 1995, Buha filed a claim for disability benefits with the Social Security Administration ("SSA"), but she was denied after the initial review because the SSA found that she could be employed

in a job that did not involve lifting. Buha asked the SSA to reconsider its decision, but she was again denied. After the second denial, Buha requested a hearing, in which she unsuccessfully argued that she became disabled as of June 28, 1994. At the SSA hearing, the administrative law judge ("ALJ") considered evidence from her treating physician Dr. Albert Pierce and a vocational expert. The ALJ determined that Buha was able to perform other jobs in Michigan and therefore was not disabled. Buha did not appeal the SSA decision any further.

Less than two years later, Buha applied for SSA benefits again, and after a February 10, 1999, hearing on her disability, another ALJ concluded that Buha had been disabled since the date she asserted she was unable to work—July 8, 1997—the day after the earlier SSA decision that she was not disabled.

After that decision by the SSA, Buha applied, in May 1999, for disability pension benefits from the Fund, asserting that she was disabled in March 1995. In 1990, the Fund merged with the Michigan United Food and Commercial Workers Unions and Food Employers Joint Pension Fund ("Michigan Fund"), of which Buha was a member. The Fund is a "pension plan" as defined by 29 U.S.C. § 1002(2); it provides pension benefits to eligible participants, and is administered by a plan administra-

tor ("Board of Trustees" or "Trustees"). Buha qualifies as a "participant" under 29 U.S.C. § 1002(7).[1] Both the Michigan Fund and the Fund "require that a participant demonstrate that he or she was totally and permanently 'disabled' . . . at the time the participant terminated Covered Employment."[2] To establish total and permanent disability, the participant must demonstrate that "he is unable to engage in any substantial gainful activity by reason of any medically determinable, physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"[3] J.A. at 75.

On November 22, 1999, the Fund's Board of Trustees denied Buha's application for disability benefits because she did not "become Totally and Permanently Disabled while working in Covered Employment." J.A. at 86. In the letter the Fund sent Buha explaining its decision, the Fund cited only the SSA determination of a 1997 disability date as the reason for the denial of benefits; Buha was deemed to have been disabled for SSA purposes only from July 8, 1997. Buha ceased working in March 1995, and Kroger stopped contributing payments to the Fund on her behalf at that time. According to the Fund standard, Buha needed to have been disabled in March 1995—the time she left covered

---

1. The definition of "participant" is
   any employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit.
   29 U.S.C. § 1002(7).

2. According to Plan Document, § 1.10, Covered Employment is defined as "employment

   . . . for which Contributions are made by an Employer on [the worker's behalf] to the Fund."

3. The Michigan Fund considered a person disabled if the participant can demonstrate "he has been totally disabled by bodily injury or disease so as to be prevented thereby from engaging in any regular employment [provided] such disability appears likely to be permanent and continuous during the remainder of his life. . . ." J.A. at 81–82.

employment—to recover from the Fund. The Trustees concluded that since she had tried and failed under SSA to be declared disabled since 1995, the subsequent SSA disability ruling and onset date of July 1997 kept her from recovering from the Fund.

In the Fund's administrative record, there was other evidence to support the Trustee's decision. First, the Fund provided Buha with a required Medical Statement for her physician to complete to assist the Trustees in their determination of her eligibility for disability benefits. Dr. Pierce simply responded "don't know" to three questions asking the time when the present injury occurred, the "[d]ate the patient became unable to work," and previous history of this illness. J.A. at 97. Further, Dr. Pierce stated he had "no objective findings" under the section entitled present condition, and he did not complete the section to certify that he "find[s] the patient to be totally disabled." J.A. at 97–99. Second, there was a report by Dr. Buckingham, the Trustees' medical consultant. After reviewing the administrative record, Dr. Buckingham concluded that there was no reason to establish a disability date before July 8, 1997.

Buha appealed this decision within the Fund on the ground that the SSA determination was insufficient both legally and factually for the Trustees to decide that she was not disabled. She submitted additional evidence in support of her claim. This evidence included a 2000 letter from Dr. Pierce stating that he believed "Buha has been disabled from significant employment since 1994." J.A. at 195. In addition, she submitted the notes Dr. Pierce kept concerning her visits.[4] The Fund also received the SSA decisions. In addition, Dr. Buckingham's successor. Dr. Weiss, based on the administrative record, concluded that she was not totally and permanently disabled from Covered Employment in 1995. Buha was notified of her unsuccessful appeal by the Fund on September 11, 2000. This letter did not mention the earlier SSA determination of a disability onset date as a reason for the denial, and according to Buha, mentioned for the first time that the denial was because she could have performed some work between March 1995 and July 1997.

After this denial, Buha filed a suit in the district court on March 2, 2001, seeking disability benefits from the Fund under § 502(a)(1)(B) of the Employee Retire-

---

4. Selected excepts of Dr. Pierce's notes include:

September 27, 1994  I believe that she has a chronic synovitis and arthritic condition. I do not believe that this is going to get better. . . .

October 18, 1994  Hands are killing her. She has been at work. . . . I know that [the synovitis] is aggravated when she works whether she is at work or at home. . . .

November 2[?], 1994  We are going to maintain her restriction at the moment. She says that she can do that work and it does not bother her significantly, for the time being I see no other solution [than] to continue her on a two pound restriction and she can stock shelves.

January 24, 1995  She is able to work on her current restriction of two pounds. . . .

February 27, 1995  I asked her if she was able to perform her duties under the job restriction that I gave her. She said that she is. . . .

August 8, 1995  She comes in today and she is still stating that her hands are bothering her. The last couple days have been worse than previously such that she has actually had to stop doing whatever her activity is and rest one half hour or so before she can begin again. . . .

November 14, 1995  I do not believe that her condition is going to get better over time. She may be able to seek other employment, but certainly not the one that she has been doing.

ment Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B). She alleged that the Fund's denial of her disability benefits was arbitrary and capricious. The parties both filed motions for summary judgment, and the district court conducted a hearing. On February 19, 2002, the district court denied the Fund's motion and granted Buha's Motion for Disability Pension Benefits retroactive to March 7, 1995, ruling that the Fund's denial of Buha's "benefits reflected an 'arbitrary and capricious' evaluation of the medical evidence." The district court also held that the Fund was not entitled to use offensive collateral estoppel to argue an onset date of 1997. The Fund filed this timely appeal.

### Discussion

We review a district court's grant of summary judgment de novo. See *Smith v. Ameritech*, 129 F.3d 857, 863 (6th Cir. 1997).

The Fund contends that the decision of its Board of Trustees to deny disability benefits to Buha was supported by the evidence, and the district court erred by granting summary judgment in favor of Buha and denying the Fund's motion for summary judgement. Principally, the Fund argues that (1) the Trustees correctly decided Buha's disability benefits, and (2) the district court improperly substituted its judgment instead of deferring to the decision of the Trustees unless that decision was arbitrary and capricious. We agree with the Fund that the Trustee's determination was not arbitrary or capricious.

Under ERISA, the administrators' actions are reviewed using an arbitrary and capricious standard, if the plan grants discretionary authority to the plan administrator to determine eligibility for benefits or to construe the terms of the plan. *Fire-*

*stone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). There is no dispute in this case that the Trustees of the Fund have such discretionary authority, and the arbitrary and capricious standard accordingly governs. This court has stated

> When applying the arbitrary and capricious standard, the Court must decide whether the plan administrator's decision was "rational in light of the plan's provisions." Stated differently, "when it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious."

*Williams v. Int'l Paper Co.*, 227 F.3d 706 (6th Cir.2000) (quoting *Daniel v. Eaton Corp.*, 839 F.2d 263, 267 (6th Cir.1988), and *Davis v. Ky. Fin. Cos. Ret. Plan*, 887 F.2d 689, 693 (6th Cir.1989)). Thus, the standard requires that the decision of the Trustees "be upheld if it is the result of a deliberate principled reasoning process, and if it is supported by substantial evidence." *Killian v. Healthsource Provident Adm'rs, Inc.*, 152 F.3d 514, 520 (6th Cir.1998) (quoting *Baker v. United Mine Workers of Am. Health and Ret. Funds*, 929 F.2d 1140, 1144 (6th Cir.1991)). The Trustee's decision to deny benefits to Buha was supported by the requisite substantial evidence and was not arbitrary or capricious. Accordingly, we reverse the decision of the district court.

It is not for this court to decide whether or not the Trustees correctly decided to deny benefits to Buha. Instead, this court must decide whether there was sufficient evidence in the administrative record before the Trustees to decide that Buha did not qualify for disability benefits under the plan documents. If sufficient evidence exists to uphold the Trustees decision, we must uphold the Trustees' determination.

The Trustees considered all of the medical evidence Buha submitted. The district court held that the medical evidence in this case overwhelmingly favored Buha's position that she was disabled in March 1995 when she left Kroger. Our review of the record does not support this assessment. Dr. Pierce's notes indicate that he believed Buha could perform other jobs as late as November of 1995, although later in a letter dated April 27, 2000, Dr. Pierce stated his new opinion that Buha has been disabled since 1994. In addition, the Trustees also had before them the decisions of the SSA ALJs and the reports from their own doctors which indicated that she did not become disabled until 1997.

With evidence in the administrative record to support either an onset date of March 1995 or a subsequent date, we cannot say that the Trustee's decision to deny Buha benefits under the plan documents was irrational "in light of the plan's provisions." *Daniel v. Eaton Corp.*, 839 F.2d 263, 267 (6th Cir.1988). Simply looking at the notes and letters of Dr. Pierce could lead reasonable people to different conclusions concerning the onset date, and that is sufficient under the arbitrary and capricious test. The district court held that the Trustees placed too much reliance on the SSA-determined onset date; the district court also refused to take into account the first SSA ALJ's determination[5] and declined to give weight to the opinions of the Fund's consulting doctors. Even assuming that the district court was correct in these aspects of its analysis, there was sufficient evidence in Dr. Pierce's notes and letter for the Trustees to conclude that Buha was not disabled at the time she left covered employment.

Having concluded that the Trustees did not arbitrarily and capriciously deny Buha disability benefits, we need not reach other issues raised by the Fund, including whether the Fund could assert collateral estoppel based on the SSA determinations.

We REVERSE the judgment of the district court.

---

**5.** The district court did not consider the first SSA ALJ determination because the fund did not have that evidence for its first decision. However, that ALJ determination was in the record on the appeal to the Fund, and accordingly may be considered on court review. *See Miller v. Metropolitan Life Ins. Co.*, 925 F.2d 979, 986 (6th Cir.1991).