NOT RECOMMENDED FOR PUBLICATION
File Name: 07a0212n.06
Filed: March 22, 2007

No. 05-2124

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| DEBRA HAWKINS-DUNN, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | **ON APPEAL** FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| GENERAL MOTORS CORPORATION and | ) | EASTERN DISTRICT OF MICHIGAN |
| METROPOLITAN LIFE INSURANCE | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendants-Appellees, | ) | |
| | ) | |
| | ) | |
| | ) | |

**BEFORE:** BOGGS, Chief Judge; MERRITT, and MOORE, Circuit Judges.

**MERRITT, Circuit Judge.** In this ERISA action, Debra Hawkins-Dunn appeals the District Court's holding that she is not entitled to an additional 0.8 years of participation under the Extended Disability Benefits plan of her former employer, General Motors.[1] Because General Motors' interpretation of the disability plan is not arbitrary and capricious, we affirm the District Court's decision. We also deny Hawkins-Dunn's request for attorney's fees because the issue was not properly raised in the District Court.

---

[1] In the District Court, Hawkins-Dunn also claimed she was entitled to additional service time under General Motors' pension plan. The District Court held that she is entitled to the additional pension credit and General Motors does not contest that decision on appeal.

**I.**

Hawkins-Dunn began working for General Motors on August 15, 1977. As a member of the United Auto Workers, she participated in General Motors' pension and long-term disability insurance plans. Hawkins-Dunn worked for General Motors until she became disabled on January 27, 1987. She returned to work for two brief periods in 1987, but neither was long enough to "reset" January 27 as her disability leave date under the terms of the GM disability plan. As of January 27, 1987, Hawkins-Dunn had worked for General Motors for nine years and seven months.

Pursuant to General Motors' leave policies, Hawkins-Dunn received Sickness & Accident Benefits for the first 52 weeks that she was unable to work, ending March 7, 1988. At this point, she began receiving Extended Disability Benefits. Under the Extended Disability Benefits Plan, the length of time an employee is eligible to receive disability payments depends principally on whether an employee has accrued ten years of participation under the plan. More specifically, an employee with ten (or more) years of participation on the date the disability begins is entitled to receive disability benefits until age 65. An employee with less than ten years, on the other hand, will receive disability benefits for a period of time equal to her years of participation.[2]

---

[2]Article II, section 7(c) of the Extended Disability Benefits Plan describes the benefit period as follows:

> In the case of an employe [sic] . . . who has ten or more Years of Participation as of the day on which the disability commenced, the [period] commencing with the month in which the date of the expiration of . . . weekly Sickness and Accident Benefits occurs and terminating with the end of the month in which the employe attains age 65.
> [I]n the case of an employe who has less than ten Years of Participation as of the day on which the disability commenced, the [amount of time] by which the employe's Years of Participation at commencement of disability exceed[s] the maximum number of weeks for which he is entitled to receive Sickness and Accident Benefits.

Hawkins-Dunn continued to receive monthly disability payments from March 1988 until April 2000, when an analyst at Metropolitan Life Insurance Company, the plan administrator, discovered that her benefits should have terminated in March 1996, based on her 9.6 years of participation at the time her disability commenced. The insurer subsequently communicated this finding to Hawkins-Dunn and ceased her disability payments.[3]

In an effort to reinstate her benefits, Hawkins-Dunn contacted a representative of the United Auto Workers and asked whether General Motors and Metropolitan Life were mistaken in their conclusion that she had not attained ten years of participation in the plan. Ron Graham, from the UAW's Benefit Plans Section, responded by letter on July 27, 2004:

> I have concluded my inquiry about the issue you brought to my attention about your eligibility for extended disability benefits until you turn 65.
>
> The records show that your first day of disability (sick leave) was January 27, 1987. At that time, you had 9.6 years of credited service. In order to have your extended disability benefits continue to age 65, on January 27, 1987, you would have to have had 10 years of credited service. Your plant seniority date was August 15, 1977, and your last day worked was January 27, 1987, by the calender you were over 6 months short of 10 years.
>
> An audit of your credited service is enclosed. Two UAW International Representatives from the UAW G.M. Department Benefits Staff had checked this issue for you before. They both came up with the results on your inquiry that I did and I have included both of those responses for your records. You should already have copies, but I am including these answers again.

J.A. 103

---

[3]General Motors waived recovery of all but the last year of disability benefits overpayments. The remaining overpayment was more than offset by the fact that the insurer had been using an incorrect (and lower) rate in computing her disability payments. As a result of this offset, Hawkins-Dunn received a net payment of $3,390.60.

J.A. 67-68. Hawkins-Dunn continued to complain to Graham about the denial of continued disability benefits, so Graham contacted Elizabeth LaMarra, an insurance specialist at General Motors. LaMarra responded by letter on August 25, 2004, assuring Graham that his analysis was correct. J.A. 69-70.

In the District Court, Hawkins-Dunn claimed she was entitled to additional credited service under the Pension Plan and the disability plan. The District Court concluded that Hawkins-Dunn had earned an additional 0.8 years of service time under the Pension Plan on account of a plan provision that awards service credit for corporation-approved leaves of absence. Specifically the court found that a 1992 worker's compensation settlement between Hawkins-Dunn and General Motors rendered a portion of her first year of disability leave a corporation-approved leave of absence. The court held that this additional credit did not apply under the disability plan because it was earned after the date on which Hawkins-Dunn commenced disability leave.

## II.

Under ERISA § 502(a)(1)(B), a participant in an employee benefit plan may bring an action "to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Where, as here, the benefit plan in question gives the plan administrator authority to construe the terms of the plan, courts will only overturn the administrator's decision if it is arbitrary and capricious. *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 114-15 (1989). This court reviews the District Court's application of the arbitrary and capricious standard de novo.

An interpretation of an employee benefit plan is not arbitrary and capricious when the reading is "rational in light of the plan's provisions." *Daniel v. Eaton Corp.*, 839 F.2d 263, 267 (6th Cir. 1988). This standard recognizes that each interpretation of an employee benefit plan "implicates the rights of other members of the plan" and by ensuring that an administrator's decision is rational "the courts contribute to consistency and fairness in plan administration." *Id.*

The resolution to this dispute over Hawkins-Dunn's service time turns on the interpretation and application of the terms of General Motors' disability plan. As excerpted above, the disability plan states that an employee's "years of participation" for the purposes of calculating disability benefits is determined "as of the day on which the disability commenced." J.A. 51, 103. It is undisputed that, as of January 27, 1987, when Hawkins-Dunn's disability commenced, she had accumulated 9.6 years of service time, just short of the ten years needed to become eligible for disability benefits until age 65. In light of this fact, we agree with the District Court's conclusion that General Motors' determination that Hawkins-Dunn has less than ten years of participation under the disability plan was not arbitrary or capricious.

Hawkins-Dunn argues that a provision in General Motors' insurance plan summary entitled "What you should know about your Benefits for hourly employees" conflicts with the language in the disability plan and compels a finding that she is entitled to more than ten years of participation.[4] Specifically, Hawkins-Dunn points to language in the plan summary under the heading "Years of Participation under the Insurance Plan" that states, "For insurance purposes, your credited service

---

[4]Where the language in a plan summary conflicts with the terms of the benefit plan itself, the provision in the plan summary controls. *University Hosps. of Cleveland v. Emerson Elec. Co.*, 202 F.3d 839, 850-51 (6th Cir. 2000).

accrued on and after October 1, 1975 under the Pension Plan will be added to your years of participation under the Group Life and Disability Insurance Program as of September 30, 1975." J.A. 78. Hawkins-Dunn interprets this provision to allow her to use her credited service under the pension plan, which all parties agree is in excess of ten years, to qualify for the additional disability benefits.

We begin by noting that Hawkins-Dunn's interpretation is not the only, or even the most plausible, interpretation of the summary plan language cited. Instead, the provision allows an employee to add credited service under the pension plan accrued after October 1, 1975, to the years of participation earned by the employee prior to September 30, 1975. Since Hawkins-Dunn did not begin working at General Motors until 1977, this provision appears to have no relevance to her benefit calculations.

Further, even if this provision did somehow allow for an employee hired in 1977 to add pension credit to her years of participation under the insurance plan, Hawkins-Dunn's eligibility for benefits under the disability plan is determined "as of the day on which [her] disability commenced." J.A. 103. Thus, as the District Court observed, she cannot add the credit she received for a corporation-approved leave of absence that occurred after January 27, 1987, to the years of participation she had on that date.

Reading the provision of the plan summary cited by Hawkins-Dunn in light of the summary's surrounding provisions further supports the conclusion that General Motors' interpretation is not arbitrary or capricious. The section titled "Years of Participation under the Insurance Plan" sets forth a method for changing the way General Motors calculated years of participation. The section is

broken into three subsections: 1) Prior to September 1, 1950; 2) For the Period September 1, 1950 to October 1, 1975 and 3) On and After October 1, 1975. The language highlighted by Hawkins-Dunn is in the last of these subsections.

A close inspection of the three subsections shows that the language of the second subsection more closely mirrors the interpretation Hawkins-Dunn is trying to assign to the third subsection. The second, or interim, subsection provides in part, "If your credited service under the Pension Plan is greater than your years of participation, credited service may be used instead of years of participation." J.A. 78. If General Motors intended for employees to be able to use their credited service for the pension plan for insurance purposes, this straightforward provision would have appeared in the third, forward-looking section. The company's decision not to employ this same provision in the final subsection indicates that the third subsection has a different meaning, such as the one described above. Since the interpretation urged by Hawkins-Dunn is inconsistent with the language of the plan summary, we cannot say that General Motors' interpretation is arbitrary and capricious.

Hawkins-Dunn also requests this court to order the defendants to pay her attorney's fees relating to her District Court victory on her pension claim. Since the request was never properly briefed or ruled upon in the District Court, we decline to reach it.[5]

For the foregoing reasons, we affirm the decision of the district court.

---

[5]The record contains only one reference to attorney's fees; it appears in the second-to-last line of Hawkins-Dunn's 13-page response to General Motors' motion to affirm the administrator's decision. In its order, the District Court did not address this passing request.