NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 08a0680n.06
Filed: November 5, 2008

No. 07-4074

# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

RICHARD WHITESCARVER,

    Plaintiff-Appellant,

        v.

SABIN ROBBINS PAPER CO., Administrator of the
Supplemental Executive Retirement Plan; SABIN
ROBBINS PAPER CO,

    Defendants-Appellees.

On Appeal from the United
States District Court for the
Southern District of Ohio at
Cincinnati

_____/

**Before:**     **GUY, BATCHELDER, and McKEAGUE, Circuit Judges.**

**PER CURIAM.**    In this ERISA action contesting the denial of retirement benefits, plaintiff Richard Whitescarver challenges the district court's entry of judgment for his former employer. Whitescarver claims the district court erred by (1) allowing the expansion of the administrative record and the employer/plan administrator's insertion of "new reasons" for the denial; (2) applying the wrong standard of review to the plan administrator's decision; and (3) not awarding him attorney fees at the point it entered judgment for plaintiff.

**I.**

Plaintiff Richard Whitescarver, the former president of defendant Sabin Robbins Co., seeks retirement benefits set aside by the company for a small number of executives in its Supplemental Executive Retirement Plan (sometimes called a "top hat" plan, referred to herein as the "Plan"). He asserts he was wrongly excluded from approximately $300,000 of Plan benefits by the company's termination of his employment in 2003 "for cause."[1]

Whitescarver worked for Sabin Robbins Co., a Cincinnati, Ohio paper reseller, from 1975 until the fall of 2003. He moved up the ranks from salesman to president, a position he held from 1999 until August of 2003. In early August 2003, he was contacted by a member of the Sabin Robbins Board of Directors, notifying him of a meeting of the Executive Committee for the following day, August 3, 2003. At the meeting, the other three participants asked him to resign as Sabin Robbins's president.

Whitescarver did not agree to resign as president, and on August 8, 2003, the Board of Directors voted to remove him. Whitescarver's compensation was not immediately affected. Although Whitescarver was excluded from Sabin Robbins's facilities after this, he continued on as the most highly compensated Sabin Robbins employee—specifically to assist with a failing business deal with a Pennsylvania investor group called "Team Ten." Team Ten had recently refurbished a Tyrone, Pennsylvania paper mill, and Sabin Robbins had agreed to purchase a large amount of paper produced by the mill. The parties agree that Whitescarver was uniquely positioned to perform this work. The Executive Committee

---

[1]The Plan provides that benefits are payable if an employee is terminated without cause, but not payable if the employee quits or is discharged for cause.

authorized Whitescarver to attend a mid-August Team Ten meeting in Tyrone and requested that he create a marketing plan in connection with the project. At the point of Whitescarver's termination as president, it was contemplated that an agreement would be reached on either Whitescarver's severance or his continued employment with Sabin Robbins.

On or about August 11, 2003, Whitescarver changed the billing on his Sabin-Robbins-issued cell phone after which bills and call details were mailed to his home instead of to Sabin Robbins's offices. Whitescarver submitted one of his post-August 11 cell phone bills to Sabin Robbins for reimbursement in September or October, and Sabin Robbins sent a check to Whitescarver. When Sabin Robbins later asked for the bill detail, however, Whitescarver communicated that he had submitted the reimbursement request in error, and repaid Sabin Robbins the amount of the reimbursement. Whitescarver never did supply the cell phone records.

During the time period from August to October 2003, the parties had an ongoing dispute over Whitescarver's severance package. Sabin Robbins made a severance proposal which Whitescarver rejected, then Whitescarver made a counter-proposal that Sabin Robbins rejected. It is alleged by Sabin Robbins that Whitescarver withheld information crucial to the Team Ten deal as leverage to get the severance package he demanded. Whitescarver, on the other hand, contends that he gave Sabin Robbins all the requested Team Ten information he was capable of providing, especially in light of his newly limited access to Sabin Robbins information and resources.

Ultimately, Sabin Robbins terminated Whitescarver's employment in late October 2003.[2] In a letter written by new president Tom Roberts, Whitescarver's employment was to be terminated as of October 31 for cause, which meant Whitescarver would not be eligible for retirement benefits from the Plan. The letter focused on alleged prohibited contact between Whitescarver and Sabin Robbins employees, vendors, and customers.[3]

> [O]n August 8, 2003, you were specifically directed to not have any communication with Sabin Robbins' vendors, customers or employees unless authorized by the Executive Committee . . . . That directive was reiterated numerous times in subsequent communications. However, a review of your cell phone calls for the period from August 8 through August 10, 2003 leads us to conclude that you violated the above referenced directive and had multiple communications which were contrary to this directive. Because these calls were not authorized, we must infer that those communications were not in furtherance of Sabin Robbins' business interests. Furthermore, your recent declination to supply a detailed statement of cell phone charges for which you received reimbursement from Sabin Robbins (and your decision to pay back the amount that you were reimbursed rather than supply the detail) leads us to infer that your violation of the August 8, 2003 directive likely continued after August 10.

Roberts also wrote that if Whitescarver turned over his personal cell phone records, the Board would re-evaluate the for cause determination. On November 10, 2003, Roberts authored another letter, stating that because the personal cell phone records had not been

---

[2]By the time this happened, Sabin Robbins had terminated the agreement with Team Ten.

[3]It is Sabin Robbins's contention that Whitescarver was directed as of August 8, the day he was terminated as president, not to have unauthorized contact with employees, associates, vendors, or customers of Sabin Robbins.

turned over, Whitescarver's employment was terminated "for 'Cause' as that term is defined" in the Plan.[4]

Whitescarver secured counsel and a letter was sent on his behalf to the Sabin Robbins Board of Directors on November 14, 2003, requesting either review or reconsideration of the for cause termination decision. On November 26, 2003, the Board responded to the letter stating that it would reconsider its decision only if Whitescarver would

> share his cell phone records for the period beginning August 11, 2003 (the date he unilaterally switched the cell phone from a business phone in the name of the Sabin Robbins Paper Company to his personal phone) and ending October 21, 2003 and such records show that he was not making calls in violation of the Company's directive to him.

Whitescarver filed suit the next month claiming entitlement to Plan benefits under 29 U.S.C. § 1132.

Sabin Robbins filed a Fed. R. Civ. P. 12(b)(6) motion to dismiss, asserting that Whitescarver had "raced" to the courthouse prior to exhausting his administrative remedies, "prematurely" filing suit in district court. Sabin Robbins's argument was, essentially, that Whitescarver's administrative remedy was to allow for the examination of his cell phone records,[5] and without allowing such examination, he did not allow the plan administrator the opportunity to review his claim. This motion was denied by the district court, which found

---

[4]The Plan defines "cause" as "the disclosure of information (as specified in Section 2.03(a)), competition (as specified in Section 2.03(b)), theft, fraud, dishonesty, embezzlement, disloyalty and intentional destruction of or wanton disregard for property, but only insofar as such actions relate to the Employer."

[5]Sabin Robbins also referred to Whitescarver's "unapproved vacation" and a redacted American Express bill in its motion to dismiss.

that Whitescarver's appeal of the decision, via letters authored by his counsel, served to exhaust his administrative remedies.

After the district court denied Sabin Robbins's motion to dismiss for failure to exhaust administrative remedies, the parties filed cross motions for judgment. Without oral argument, the court entered judgment for Whitescarver finding that Sabin Robbins had acted in an arbitrary and capricious manner in denying Whitescarver's benefits, determining substantial evidence did not support a finding that Whitescarver had been "disloyal" under the Plan. Sabin Robbins then filed a motion for reconsideration, specifically requesting that the court hold oral argument. This motion was granted. After oral argument, a settlement conference, and additional briefing, the district court reversed itself giving the parties "60 days from the date of this Order to complete the administrative record."[6] The order remanded the action to the plan administrator, following the 60 days, for a 30-day period in which it could "conclude its administrative appeal and issue a final decision." The court specifically retained jurisdiction for "Whitescarver's appeal of the SER Plan administrator's final decision, if any."

Ultimately, after expansion of the record, Sabin Robbins stuck by its determination that Whitescarver had been disloyal, his termination had been for cause, and that he was not

---

[6]This timing tracks 29 C.F.R. § 2560.503-1(i)(1), which gives the plan administrator a 60-day period in which to notify a claimant of its benefit determination on review, and the possibility of a 60-day extension of that time with notice to the claimant. Sabin Robbins argued, citing this provision, that the timing of Whitescarver's lawsuit prematurely cut off the 120 days to which Sabin Robbins was entitled.

entitled to Plan benefits.[7]  On the parties' second set of cross- motions for judgment, the district court denied Whitescarver's motion and granted that of Sabin Robbins. Whitescarver timely appealed.

## II.

Plaintiff claims that the district court erred in granting reconsideration and, subsequently, remanding the matter to the plan administrator.  Plaintiff highlights Department of Labor regulations, requiring ERISA plan administrators to provide "written or electronic notification of any adverse benefit determination," including "[t]he specific reason or reasons for the adverse determination." 29 C.F.R. § 2560.503-1(g)(i).  His position is that the reasons first given by the plan administrator, in October 2003, were the only reasons upon which defendant can rely for his termination.

---

[7]This was communicated to Whitescarver in a letter, which stated that the Sabin Robbins Board (comprised of four individuals who were not on the Board in 2003) had considered his "appeal" of November 14, 2003, and determined that Whitescarver's "disloyalty" supported its "for cause" determination. Specifically, the letter stated that

> As detailed below, the Record sufficiently shows that: (1) you refused repeatedly to cooperate in the creation of a needed marketing plan, putting your own interest before Sabin Robbins; (2) you extorted the Company at a critical time by refusing to assist with the Team Ten dispute (which as you know included the threat of litigation for Sabin Robbins) unless your onerous severance demands were met; (3) you disregarded and violated Company directives to not have communications with certain persons/entities; (4) you converted company cell phone records; and (5) continued to conceal those same records despite numerous requests over the course of 3+ years.  In sum, the overwhelming evidence in the Administrative Record reveals that after your removal from President, you continually placed your interests before those of the Company.  It is primarily for this reason that we have determined that the Board's October 23, 2003 termination for "cause" was properly supported.

The reasons asserted in the October 2003 notice sent to Whitescarver were that he had made contact with individuals he was directed not to contact and the company's "inference," from his refusal to turn over subsequent cell phone records, that such communications had continued after August 10, 2003. The letter also referenced his "actions subsequent to [his] removal as President." These reasons were largely reiterated in the November 10, 2003 letter. It was these reasons to which Whitescarver responded in his communication of November 14, 2003. The response included a statement made by Whitescarver detailing his activities in August and on certain dates in September and October. It specifically addressed contacts he had with Sabin Robbins vendors, customers, or employees in August. In a response dated November 26, 2003, Sabin Robbins again addressed the cell phone calls, specifically enumerating calls from cell phone records prior to August 11, 2003, and again stating its "inference" that such calls continued beyond August 10 in light of Whitescarver's continuing refusal to turn over any records.

Whitescarver responded to this letter on December 22, 2003, again submitting a sworn statement discussing certain calls placed in August. Whitescarver took the position that he was not directed to refrain from such communication until August 18, and that the calls were personal in nature, not business related. He filed suit two days later.

In its initial order granting judgment for Whitescarver, the district court rejected Sabin Robbins's contention about the phone records. It assumed, for purposes of the decision, that the no-contact directive was given to Whitescarver on August 8, 2003. Next, it found that

although there was "substantial evidence that Whitescarver disobeyed the letter of the no-contact directive by contacting three vendors and unnamed employees from August 8th-10th," there was no "substantial evidence that Whitescarver acted disloyally."[8]

In its motion for reconsideration, defendant asserted for the first time that Whitescarver had made attempts at extortion in negotiating his severance, and attached Whitescarver's August 17, 2003 email concerning a proposed severance package. After oral argument and supplemental briefing, the district court decided that a remand for "completion" of the record was the appropriate disposition of the case.

## III.

This case is unlike those ERISA cases where an employee or former employee asserts entitlement to a benefit, the claim is denied, and appeal is pursued based on an agreed upon administrative record. Here, the "plan administrator," or president speaking on behalf of his board, announced an anticipatory denial of supplemental retirement benefits. A frustrating exchange between defendant and plaintiff ensued, with defendant continuing to demand cell phone records and failing to respond to plaintiff's explanation for his actions. Plaintiff then abruptly filed suit, ending any further development of the record.

We cannot find that remand to the administrator under these circumstances was erroneous. The district court found that relevant information existing at the time of the denial

---

[8]The district court also addressed Whitescarver's "unauthorized vacation," taken from late October until early November, 2003, during which he got the initial termination letter. The court noted that the vacation was not given by Sabin Robbins as a reason for the termination until after this litigation had begun, and found that, in any event, it was not behavior sufficient to uphold a termination for cause.

of benefits decision was not made a part of the administrative proceedings which were

truncated before completion. In reaching this conclusion the district court reexamined the

October-December 2003 time period:

> Whitescarver requested an appeal in writing and provided a sworn statement to Sabin Robbins on November 14, 2003. In response, Sabin Robbins on November 26, 2003 fleshed out earlier stated reasons for terminating Whitescarver, but stated it would reconsider its decision only if he produced the disputed phone records. Whitescarver responded on December 22, 2003 by providing two additional sworn statements, but he did not produce the phone records. Instead, because he took Sabin Robbins at its word that it would not consider further appeal without the phone records, Whitescarver filed this suit on December 24, 2003. The Court found in an earlier Order, and still believes, that Whitescarver's communications on November 14, 2003 and December 22, 2003, were sufficient to exhaust his administrative remedies, especially considering that there was no written claims or appeals procedure. However, the Court was not specifically called on to and did not consider at that time the implications of its Order in regards to the completeness of the administrative record.

The court noted that defendant was never able to give a full response to plaintiff's letters and

sworn statements, as its response to plaintiff's November 14 letter and statement stated it did

not "consider it to be the purpose of that letter to respond to the inaccuracies," and that it had

only two days between plaintiff's December 22 letter and statement and the day he filed suit,

December 24, 2003. We conclude that the court's conclusion that remand for further

information from both the plaintiff and plan administrator, "then known to the parties and

then relied upon by Sabin Robbins in making the decision to terminate Whitescarver for

cause in late 2003," was consistent with ERISA and within the court's discretion.

**IV.**

Having determined that the remand to the administrator was appropriate, we now must review *de novo* whether the district court was correct in applying an arbitrary and capricious standard of review to the administrator's denial of benefits.

Sabin Robbins claims the Plan expressly provides discretion to the Plan Administrator based upon the following Plan language:

> Interpretation. . . . The Employer shall have the authority to administer this Plan. The administration of this Plan by the Employer, and any action taken hereunder shall be binding and conclusive upon all parties having an interest under this Plan.

Courts must interpret a Plan's provisions according to their plain meaning. *Perez v. Aetna Life Ins. Co.*, 150 F.3d 550 (6th Cir. 1998). Where the Plan, as here, describes the interpretation reached by the employer/administrator to be "binding and conclusive," we can only conclude that the plain meaning of such language is to vest the type of discretion in the Plan Administrator that must be reviewed under an arbitrary and capricious standard. In our earlier case of *Borda v. Hardy, Lewis, Pollard & Page, P.C.*, 138 F.3d 1062, 1066-68 (6th Cir. 1998), we construed similar "binding and conclusive" language to require review under an arbitrary and capricious standard.

Whitescarver argues, however, that this is an ERISA top hat plan which must be reviewed under a *de novo* standard. A top hat plan is defined as a plan "maintained by an employer primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees." 29 U.S.C. § 1051(2). Plaintiff cites to case authority, outside of this Circuit, that supports his contention, although there appears to be

a circuit split on this issue. We find it unnecessary to discuss these cases as we conclude as did the Ninth Circuit in *Gilliam v. Nevada Power Co.*, 488 F.3d 1189, 1194 (9th Cir. 2007), that "we would reach the same conclusion under either standard of review."

**V.**

Finding no error in the manner in which the district court proceeded, we now turn to the judgment entered by the court in favor of the defendant. Our *de novo* review of this judgment convinces us that the court correctly determined that the actions of the Plan Administrator were not arbitrary or capricious.

Whitescarver was discharged for disloyalty. It was defendant's position that Whitescarver was disloyal because he refused to provide the Team Ten marketing plan, extorted the company, and concealed company cell phone records. It argues that Whitescarver held the company hostage by demanding that Sabin Robbins must first agree to satisfy Whitescarver's own personal and onerous demands before he would help solve the Team Ten problem.

We conclude, as did the district judge, that Sabin Robbins reasonably concluded that Whitescarver acted in his own best interests at the expense of the company's interests. After Whitescarver was removed as president, his employment focused almost entirely on the Team Ten agreement. The company asked him to provide a detailed marketing and sales plan for the project multiple times in August and September. Whitescarver stated at least twice that he would withhold assistance on the project until the company met his severance

demands. He also gave the impression that he was withholding helpful information on the Team Ten agreement. Finally, Whitescarver made several statements indicating that he viewed the company as an adversary.

Finding that there was a rational basis for defendant's discharge for cause, we **AFFIRM** the judgment of the district court.[9]

---

[9]Since plaintiff did not prevail in this litigation, we need not address his contention that he should have been awarded attorney fees.